FAIRBANKS, MORSE & CO. *v.* COMMISSIONER OF TAXES

February Term, 1946.

Present: MOULTON, C. J., SHERBURNE and STURTEVANT, JJ., and CLEARY and HUGHES, Supr. JJ.

Opinion filed May 7, 1946.

426

*Gelsie J. Monti* for the petitionee.

*Arthur L. Graves* for the petitioner.

SHERBURNE, J. This is an appeal under P. L. 909 to the Washington County Court from the determinations of the commissioner of taxes upon the application of the plaintiff for a revision of the additional taxes assessed against it upon its franchise tax return for the year 1941, and upon its application for a refund of the amount claimed to have been overpaid upon its franchise tax for 1941 because of the renegotiation of its contracts with the United States Navy Department. The allegations of plaintiff's petition were demurred to, and the demurrer was overruled, and the cause has been brought here upon exceptions before final judgment. Owing to the death of Erwin M. Harvey, George H. Amidon, his successor in the office of commissioner of taxes, has entered his appearance as defendant.

We will first take up the matter of the additional taxes assessed against the plaintiff. As will be seen from the following provisions of our statutes our franchise tax upon corporations is tied in with the Federal income tax law. Subdivision VII of P. L. 886, as amended by § 1 of No. 28 of the Acts of 1937, reads:

> "VII. 'Net income' means the total net income reported by the corporation to the United States treasury department for such fiscal or calendar year con-

stituting the 'income year' as herein defined plus all income received by said corporation as dividends on shares of stock owned by it, and plus all interest received on bonds owned by such corporation except such dividends and such interest as shall not be included in 'net income' as provided by § 889, and except any dividends and interest which are included in the 'net income' reported, but any exemption allowed by the United States treasury department and without deductions for losses sustained by the corporation in other fiscal or calendar years although such losses in other fiscal or calendar years may have been allowed to be deducted by the United States treasury department in a subsequent year shall not be allowed. . . ."

P. L. 890 reads:

"In computing net income there shall be allowed as deductions from gross income all deductions allowed by the United States treasury department except losses incurred by the corporation in other fiscal or calendar years."

Taking the net income from the Federal income tax return and adding thereto the dividends and interest mentioned in P. L. 886, as amended, our tax upon a corporation is based upon its net income from business done within the State arrived at by the use of a formula prescribed by the commissioner of taxes.

In making its Vermont return the plaintiff took the amounts shown in its Federal income tax return for the declared value excess profits tax and the excess profits tax as deductions and reported as the net income reported to the United States Treasury Department the amount shown as such upon its Federal return. Upon examination of the return the commissioner of taxes assessed as an additional tax a tax upon the amount of these two deducted items attributable to the business done within the State. In its appeal the plaintiff claims that this additional tax was unlawfully assessed.

The "declared value excess-profits tax" here in question (origi-

nally named "excess profits, tax") is imposed by § 600 of the Internal Revenue Code, 26 U.S.C.A. § 600, as amended by § 302 of the Revenue Act of 1941. The Code was amended by the Second Revenue Act of 1940 by adding a new sub-chapter E to Chapter 2, called the "Excess Profits Tax Act of 1940." This was amended by the "Excess Profits Tax Amendments of 1941" and by the Revenue Act of 1941. § 710 (a) of this new sub-chapter, as amended by § 201 of the Revenue Act of 1941, imposes the excess profits tax here in question.

Under the Internal Revenue Code "net income" means the gross income computed under § 22, less the deductions allowed by § 23. 26 U.S.C.A. § 21(a). We need spend no time with what constitutes gross income under §22. § 23, 26 U. S. C. A. § 23, states: "In computing net income there shall be allowed as deductions;." Then follows a long list of subsections, (a), (b), (c), etc., in which are enumerated such items as expenses, interest, taxes, losses, bad debts, depreciation and depletion. § 23 (c) (relating to the deduction of taxes in computing net income) as amended by § 202 of the Revenue Act of 1941, and in force in 1941, so far as material reads as follows:

"(c) Taxes Generally.

"(1) Allowance in general.—Taxes paid or accrued within the taxable year, except—

"(A) Federal income taxes;

"(B) war-profits and excess-profits taxes imposed by Title II of the Revenue Act of 1917, Title III of the Revenue Act of 1918, Title III of the Revenue Act of 1921, § 216 of the National Industrial Recovery Act, or section 702 of the Revenue Act of 1934, or by any such provisions as amended or supplemented;

"(2) Excess-profits tax under chapter 2E—special rules. For the purposes of this subsection, in the case of the excess-profits tax imposed by Subchapter E of Chapter 2—

"(A) The deduction shall be limited to the tax imposed for the taxable year, but any portion of

such tax paid after the taxable year shall be considered as having been paid within the taxable year."

It is interesting and helpful to note that the similar taxes originally excepted in subsection (c) (1) were "federal income, war profits, and excess-profits taxes (Other than the excess-profits tax imposed by § 106 of the Revenue Act of 1935, 49 Stat. 1019, or by § 600 of this title)." By § 105 (c) of the Revenue Act of 1942 § 23 (c) (1) (B) was amended by adding after the words "Revenue Act of 1934," the words "or Subchapter E of Chapter 2,"; and § 23 (c) (2) was repealed.

Under § 13 of the Code, 26 U. S. C. A. § 13 (relative to tax on corporations in general), as amended and in force in 1941, "the term 'Adjusted net income' means the net income minus the credit provided in § 26 (a) relating to interest on certain obligations of the United States and Government corporations," and "the term 'normal tax net income' means the adjusted net income minus the credit for dividends received provided in § 26(b)." The normal tax is imposed upon this base. Under § 15 of the Code, 26 U. S. C. A. § 15, as amended and in force in 1941, "the term 'corporation surtax net income' means the net income minus the credit for dividends received provided in § 26 (b), computed by limiting such credit to 85 per centum of the net income in lieu of 85 per centum of the adjusted net income." Upon this base surtaxes are imposed. It is significant that by § 105 of the Revenue Act of 1942 § 13 (a) (2) of the Code was amended so as to give the credit for income subject to the tax imposed by Subchapter E of Chapter 2 provided in § 26 (e) in arriving at the "normal tax net income"; and § 15 (a) of the Code was amended so as to give a similar credit in arriving at the "corporation surtax net income." Beginning in 1942 there is a credit for excess profits taxes instead of a deduction as in 1941.

It is clear from the foregoing that under the Federal income tax law as in force in 1941 the excess profits tax was deductible for the purpose of arriving at the net income for normal tax and surtax purposes. The declared value excess-profits tax was also deductible. As said in the Internal Revenue Bulletin, Cumulative Bulletin 1941-42 Jan.-June 1942 IT 35-40 at page 59:

430

"In the light of the relevant provisions and legislative history of the Revenue Act of 1941, and the indicated purpose of the amendment of § 23(c) of the Code by § 202(a) of that Act, it is the opinion of this office that the 'declared value excess-profits tax' (originally named 'excess profits tax') imposed by § 600 of the Code, as amended, and the similar 'excess-profits tax' imposed by § 602 of the Revenue Act of 1938, and by § 106 of the Revenue Act of 1935 (before and after amendment by § 402 of the Revenue Act of 1936), are not included or referred to in § 23(c) (1) (B) of the Code, as amended by § 202(a) of the Revenue Act of 1941, supra; in other words, they are not imposed by the statutory provisions therein 'or by any such provisions as amended or supplemented,' within the purview thereof. Accordingly, such taxes, paid or accrued within the taxable year, are deductible, for the aforementioned purposes for taxable years beginning after December 31, 1940, as well as for taxable years beginning after December 31, 1939, but before January 1, 1941; and are also deductible for the purpose of computing 'corporation surtax net income' (under § 15(a) of the Code, as amended by § 104(a) of the Revenue Act of 1941) for taxable years beginning after December 31, 1940."

These two taxes are treated as deductions in arriving at the "net income" in form 1120 for the return of the Federal income tax for 1941.

The defendant calls attention to the language used in P. L. 886, heretofore quoted, that " 'net income' means the total net income reported by the corporation to the United States treasury department," and that "any exemption allowed by the United States treasury department . . . shall not be allowed." He argues that the total net income is the income reported without the deduction of the excess profits taxes, and that the word "deduction," as used in 26 U. S. C. A. § 23(c) relative to the excess profits taxes, means exemption as used in P. L. 886. Were it not

for P. L. 890 it might possibly be said that the total net income was the income reported without the deduction of the declared value excess-profits tax and the excess profits tax, but in order to do so it would be necessary to stretch the meaning of the word "exemption." P. L. 890, however, is explicit. It allows all deductions allowed by the United State Treasury Department "except losses incurred by the corporation in other fiscal or calendar years."

In interpreting the intention of the Legislature we must not overlook this exception. Where express exceptions are made, the legal presumption is that the Legislature did not intend to save other cases from the operation of the statute. In such case, the inference is a strong one that no other exceptions were intended, and the rule generally applied is that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions. 50 Am Jur Statutes, § 434. *United States* v. *Colorado & N. W. R. Co.*, 157 F 321, 15 LRANS 167, 13 Ann Cas 893, writ of certiorari denied in 209 US 544, 28 S Ct 570, 52 L ed 919; *Armburg* v. *Boston & Maine R Co.*, 276 Mass 418, 177 NE 665, 80 ALR 1408; *Moore Ice Cream Co.* v. *Rose*, 289 US 373, 53 S Ct 620, 77 L ed 1265; *Cunard S. S. Co.* v. *Mellon*, 262 US 100, 43 S Ct 504, 67 L ed 894; *State* v. *Wilton R. Co.*, 89 NH 59, 192 A 623, 111 ALR 52; *Brahmey* v. *Rollins*, 87 NH 290, 179 A 186, 119 ALR 8. Since no other exception was made we infer that the Legislature intended none, but did intend to allow all of the deductions allowed by the Treasury Department, except for such losses, in ascertaining net income. Since there can be no question that the Treasury Department allowed these two taxes as deductions in arriving at net income, they must be allowed as deductions here under P. L. 890.

Relative to plaintiff's claim for a refund, its petition shows that after it had filed its franchise tax return for 1941 the Navy Price Adjustment Board on November 30, 1942, pursuant to § 403 of the Sixth Supplemental Defense Act, 1942, as amended by § 801 of the Revenue Act of 1942, determined that the plaintiff had realized excessive profits in the amount of $490,000.00 for the year 1941 in the performance of a large number of contracts between it and the Navy Department, and that $361,622.00 of such amount had already been recovered by the Treasury Department

through the collection of declared value excess-profits tax, excess profits tax, normal tax and surtax; that the plaintiff was required to pay and did pay on December 21, 1942, the balance of said amount, $128,378.00, to the Treasurer of the United States; and that the plaintiff, as a result of the return of said excessive profits, has overpaid its franchise tax based on the income earned in 1941 in the amount of $150.91; that pursuant to P. L. 908, as amended by § 5 of No. 28 of the Acts of 1937, the plaintiff applied for a revision of its franchise tax and made a claim for a refund, which the commissioner of taxes denied. The petition alleges that, where the taxable income of a corporation has been reduced through the action of the Federal Government in renegotiating the taxpayer's contracts with it, it is proper for the commissioner of taxes to revise the tax figure and redetermine the tax, and to make refund of any amount which may have been paid in excess of the franchise tax properly due upon the basis of the reduced income by reason of the renegotiation of such contracts.

Subsection (c) of § 403 of the Sixth Supplemental National Defense Appropriation Act, 1942, enacted April 28, 1942, as amended by § 801 of the Revenue Act of 1942, so far as here material provides:

"(c)(1) Whenever, in the opinion of the Secretary of a Department, the profits realized or likely to be realized from any contract with such Department . . . may be excessive, the Secretary is authorized and directed to require the contractor . . . to renegotiate the contract price. . . .

"(2) Upon renegotiation, the Secretary is authorized and directed to eliminate any excessive profits under such contract . . . (iv) by recovery from the contractor . . . through repayment, credit or suit, of any amount of such excessive profits actually paid to him. . . .

"(3) . . . In determining the amount of any excessive profits to be eliminated hereunder the Secretary shall allow the contractor . . . credit for Federal income and excess profits taxes as provided in § 3806 of the Internal Revenue Code.

"(6) This subsection (c) shall be applicable to all

contracts and subcontracts hereafter made and to all contracts and subcontracts heretofore made, whether or not such contracts or subcontracts contain a renegotiation or recapture clause, unless (i) final payment pursuant to such contract or subcontract was made prior to April 28, 1942, . . ."

Plaintiff's Federal income tax return for 1941 was made upon the accrual basis. By the terms of the renegotiation section it applied to the profits made in 1941 upon plaintiff's contracts with the Navy Department, unless final payment was made upon such contracts prior to April 28, 1942, whether or not such contracts contained a renegotiation clause. Because not raised by the demurrer we disregard the point made in defendant's brief that plaintiff's petition fails to state that final payment was not made prior to April 28, 1942. As the petition fails to state that plaintiff's contracts contained a renegotiation clause, the gist of defendant's demurrer as briefed is that without such a clause the renegotiation provisions were unconstitutional as applied to plaintiff's 1941 profits, because in violation of the Fifth Amendment to the Constitution of the United States, that private property shall not be taken for public use without just compensation, and that plaintiff's payment to the Treasurer of the United States was a voluntary one because it could have successfully defended against the action of the Navy Price Adjustment Board upon this ground.

We need not determine the constitutionality of the renegotiation provisions as applied here. At the time that the plaintiff made its payment of the balance determined to be due by the Navy Price Adjustment Board no court had determined that these provisions were unconstitutional, and in view of the statements made in the last paragraph of the majority opinion in *United States* v. *Bethlehem Steel Corp.,* 315 US 289, 62 S Ct 581, 86 L ed 855, then recently decided, relative to the power of Congress to enact laws to protect the Nation against war profiteering it was a question at least admitting of argument. The payment made by the plaintiff was voluntary only in the sense that after it was made it could not be recovered back upon the claim of unconstitutionality, any more than the plaintiff could recover back a payment made

in compromise and settlement of any bona fide unliquidated claim arising out of a contract with a private person.

By the renegotiation provisions in cases where the profits on a contract were determined to be excessive the Government was able to get supplies at a reduction from the original contract price. The situation is analogous to that of any contract for the sale of articles to be manufactured, where the purchaser demands a refund of a portion of the purchase price paid because of a bona fide claim that the articles delivered are not of the quality bargained for. In such a case there would be little question about the deductibility of the cost of the settlement of such a claim in ascertaining the seller's net income for the year in which the settlement was made. So here, were it not for the provision in § 3806 (a)(3) of the Internal Revenue Code, enacted by § 508 of the Revenue Act of 1942, the plaintiff could have claimed a deduction in its income tax return for 1942 of the amount of the excessive profits eliminated, upon the ground that it had settled a demand of the Government, the legality of which was open to argument, and the equities would be such that the Government could not question the deduction. Instead of allowing such a deduction § 3806(a)(1) provides that the part of the contract price which was accrued for the prior taxable year, 1941 in this case, shall be reduced by the amount of excessive profits eliminated, and § 3806(b)(1) provides that there shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior year is decreased by such reduction. In this way Congress has lawfully recognized the equities of the situation. See *United States* v. *Realty Co.*, 163 US 427, 16 S Ct 1120, 41 L ed 215. Had the excessive profits been eliminated in 1941, the year in which they accrued, they would have been applied in the income return for that year in reduction of the gross sales, and could have been treated as a refund. A refund given to a customer in the year in which an order for goods is filled is not part of the giver's taxable income. *Uniform Printing & Supply Co.* v. *Commissioner of Internal Revenue*, 88 F2d 75, 109 ALR 966. By the statute the plaintiff's gross sales for 1941 are reduced by the amount of excessive profits eliminated in 1942. Since our corporation franchise tax law is tied in with the Federal income tax law in arriving at the net income subject to tax, the commissioner of taxes should have resettled plaintiff's tax for 1941 with the

gross sales reduced by the excessive profits eliminated, and the amount by which its franchise tax was reduced by such reduction should have been refunded.

*The judgment overruling defendant's demurrer is affirmed, and the cause is remanded.*