### In re BURKE MOUNTAIN RECREATION, INC., Debtor.

### BURKE MOUNTAIN RECREATION, INC., Plaintiff,

### v.

### VERMONT DEVELOPMENT CREDIT CORPORATION, Defendant.

**Bankruptcy No. 85–86.
Adv. No. 86–0026.**

United States Bankruptcy Court, D. Vermont.

Sept. 12, 1986.

A. Field, Montpelier, Vt., for Vermont Development Credit Corp. (VDCC).

C. Hickey, of Swainbank, Morrissette, Neylon & Hickey, St. Johnsbury, Vt., for Burke Mountain Recreation, Inc. (debtor).

## MEMORANDUM OPINION AND ORDER

FRANCIS G. CONRAD, Bankruptcy Judge.

This adversary proceeding involves a Chapter 11 debtor who borrowed funds from a lender who was not licensed to lend by the State of Vermont. Because we find that the lender is required by statute to obtain a license, the plaintiff's cross-motion for summary judgment is granted, and the lender's motion for summary judgment is denied.

No facts are in dispute. The debtor owns and operates a ski area in northeastern Vermont. On or about October 31, 1980, the debtor, through an agent, signed a promissory note running to VDCC for $175,000.00 at fifteen percent (15%) annual interest. The promissory note is secured by a subordinate mortgage on the debtor's

real and personal property. All documents are validly executed. The loan is in default, and VDCC is due the principal sum of $173,904.92, accrued interest of $119,693.93 as of April 24, 1986, and per diem interest of $71.4677 from April 24, 1986 forward.

The parties filed cross-motions for summary judgment. We reserved decision on these motions pending a pre-trial conference and the submission of pre-trial statements by the parties. At the pre-trial conference the sole contested fact, whether VDCC was in the business of making loans, was conceded by VDCC's counsel to be an accurate characterization of his client's activities. Counsel requested oral argument and the right to submit memoranda of law to the Court. After oral argument we took the matter under advisement.

The only issue we need to decide is whether the loan, dated October 31, 1980, is void because VDCC did not obtain the lender's license required by 8 V.S.A. § 2201 for loans made in the State of Vermont with an annual interest rate greater than twelve percent (12%). Under 8 V.S.A. § 2233, a loan made in violation of 8 V.S.A. § 2201 "shall be void and the lender shall have no right to collect or receive any principal, interest, or charges whatsoever." [1]

The framing of the legal issue succinctly conveys the debtor's position. VDCC argues in support of its contention that it is not required to be licensed under 8 V.S.A. § 2201, *et seq.*, as follows:

1) In a related state action against one of the individual guarantors of the same promissory note, VDCC received a summary judgment Order in its favor.

2) VDCC is specially chartered and regulated as a lending entity under 8 V.S.A. § 1801, *et seq.*[2]

3) The Vermont legislature did not intend or contemplate that VDCC should be twice subject to scrutiny for its lending activities.

4) The Vermont Banking and Insurance Department has historically considered VDCC exempt from licensing.

5) The legislative history of 8 V.S.A. §§ 2201, *et seq.*, indicates that the purpose of the section was to bring hitherto unregulated lending entities under the purview of the Banking and Insurance Department, not entities already subject to state regulation.

---

1. 8 V.S.A. § 2201 provides: "No person, partnership, association, or corporation other than a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed shall engage in the business of making loans of money, credit, goods or things in action and charge, contract for or receive on any such loan a rate of interest, finance charge, discount or consideration therefor greater than twelve percent per annum without first obtaining a license under this section, section 7002 of this title, or sections 2352 and 2402 of Title 9 from the commissioner."

8 V.S.A. § 2233 provides: "Any person, partnership, association or corporation and the several members, officers, directors, agents and employees thereof, who shall violate or participate in the violation of any of the provisions of this chapter shall be imprisoned not more than two years or fined not more than $500.00, or both. Any contract of loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes an offense under this section, shall be void and the lender shall have no right to collect or receive any principal, interest, or charges whatsoever."

2. 8 V.S.A. § 1801 provides: "The expression 'development credit corporation' hereinafter called the corporation, as used in this chapter and section 1153 of this title, shall mean a corporation, incorporated under the general laws of the state, the purposes of which shall be: (1) To provide financial assistance to industrial, agricultural, recreational or other enterprises potentially valuable to the state or its citizens, when and to the extent which, such financing shall lie beyond the prescribed limits of laws governing banks of deposit; (2) To assist by research and counsel such enterprises; (3) To conduct ex parte inquiries into ways and means of improving, promoting or increasing the general welfare of the state, its political subdivisions and its citizens by financial aid, counsel or otherwise; and (4) To dedicate its energies to the discovery of ways and means of returning to maximum productivity any and all presently non-producing assets in the state, for the dual purpose of increasing the welfare of the owner and of augmenting the taxable potential of the state."

This is a classical case of statutory construction. The starting point in every case involving statutory construction is the language itself. *Medor v. Lamb (In re Lamb)*, 47 B.R. 79, 12 C.B.C.2d 475 (Bkrtcy.D.Vt.1985).

As a general rule, a statute should be read according to its literal terms, *United States v. Locke*, 471 U.S. 84, 93, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64, 75 (1985), unless this renders the statute ineffective or leads to irrational consequences, *In re A.C.*, 144 Vt. 37, 470 A.2d 1191 (1984), leads to an absurd consequence, *State v. Goyet*, 120 Vt. 12, 132 A.2d 623 (1957), or is otherwise demonstrably at odds with the intentions of the statute's drafters, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

When interpreting statutes, the Court is to give effect to the intent of the legislature, *State v. Lund*, 144 Vt. 171, 175, 475 A.2d 1055 (1984). It is this intent that constitutes the law, *Hill v. Commissioner*, 143 Vt. 91, 93, 463 A.2d 232 (1983). If the language is plain, the intent must be ascertained from the language itself, *Lomberg v. Crowley*, 138 Vt. 420, 415 A.2d 1324 (1980); *State v. Estate of William Taranovich*, 116 Vt. 1, 5, 68 A.2d 796 (1949). The primary vehicle for interpreting the meaning of a Vermont statute is the "plain meaning rule." This rule was described recently in *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 529, 496 A.2d 154 (1985). The Supreme Court of Vermont, citing *Heisse v. State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983), said:

> The most elementary rule of statutory construction is that the plain meaning of the statute controls. If confusion or ambiguity does not appear, then the statute is not construed, but rather is enforced in accordance with its express terms.

We find no ambiguity in 8 V.S.A. §§ 2201, *et seq.* Its express provisions are clear and unequivocal. We arrive at this conclusion reading the statute in its entirety. See *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975) (the Court, in expounding a statute, must not be guided by a single sentence or a member of a sentence, but must look to the provisions of the whole law and to its object and policy). See also, *Clarence Reed, Adm v. Rosenfield*, 115 Vt. 76, 78, 51 A.2d 189 (1947).

A reading of 8 V.S.A. § 2201 reveals that "a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed" is exempted from the section. The maxim of statutory construction, *expressio unius est exclusio alterius*, teaches us that the expression or the inclusion of one thing is the exclusion of others. *Ford v. United States*, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927). This maxim applies to enumerated exceptions. Where there is an express exception, it comprises the only limitation of the statute and no other exception will be implied. *Andrus v. Glover Construction Co.*, 446 U.S. 608, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980). See also *Fairbanks, Morse & Company v. Commissioner of Taxes*, 114 Vt. 425, 47 A.2d 123 (1946) (an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions). Since VDCC is not included within the exceptions, we can only infer that the legislature intended VDCC to obtain a license to lend money. We are not at liberty to supply what the lawmakers have omitted. *State v. Fox*, 122 Vt. 251, 255, 169 A.2d 356 (1961).

VDCC first argues that a Vermont Court has already decided the legal issue in this case. We disagree. Although a Federal Court is required to follow the established precedent of a particular state when it is interpreting that state's statutes, *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 715 S.Ct. 822, 95 L.Ed. 1078 (1951), this case does not reach us in such a posture. No appellate court in Vermont has interpreted the relevant statutory provisions. What was presented to us as precedent by VDCC is an unpublished opinion of the Caledonia Superior Court, the trial court, granting summary judgment to

VDCC against an individual guarantor of the note at issue here. This case is on appeal to the Vermont Supreme Court. In the absence of a decision by the Supreme Court or an intermediate appellate court on an issue of substantive state law, the decision of a state trial court is entitled to some weight, but does not control our decision. *Harris v. Lukhard,* 733 F.2d 1075 (4th Cir.1984); *Carpenters Health & Welfare Fund of Philadelphia and Vicinity v. Kenneth R. Ambrose, Inc.,* 727 F.2d 279 (3d Cir.1983). In the absence of established precedent, we must decide this case as we understand it.

Counsel for VDCC argues next that because it is specially chartered and regulated as a lending entity under 8 V.S.A. § 1801, the Vermont legislature did not intend or contemplate that VDCC twice undergo scrutiny by the State Banking and Insurance Department. However meritorious the purpose of avoiding double scrutiny, a plain reading of the statute does not reveal this purpose on the part of the Vermont legislature. Nor may we legislate under the guise of construction, *Murphy Motor Sales v. First National Bank,* 122 Vt. 121, 123, 165 A.2d 341 (1960), creating an exception that does not exist. Plainly, the Vermont legislature has required other entities within the regulatory purview of 8 V.S.A. § 2201 to be doubly regulated.[3]

It is equally clear that the legislature has had ample time and opportunity to review and amend 8 V.S.A. §§ 2201, *et seq.,* to include legislation adding "development credit corporations" to the specific exceptions to licensure enumerated in 8 V.S.A. § 2201. The history of 8 V.S.A. § 2201, *et seq.,* may be traced at least to the year 1937. It is safe to assume that the concept of development credit corporations was not envisioned by the lawmakers in 1937 or in 1947, when the legislature amended 8 V.S.A. § 2201. Development credit corporations came into existence before 1969, when 8 V.S.A. §§ 1801–1804 were enacted.

The Vermont legislature amended 8 V.S.A. § 2233, the penalty provision of the licensing statute, in 1969, 1979, 1980, and 1985. Having amended this statute (at least technically) four times since enacting 8 V.S.A. §§ 1801–1804, the legislature was certainly aware of VDCC and could easily have included VDCC within the enumerated-exceptions had it elected to do so. Without an expression of clear legislative intent, we are unwilling to read into the statute an exception that has not been included by the drafters. See *Fairbanks, Morse & Company v. Commissioner of Taxes,* 114 Vt. 425, 47 A.2d 123 (1946).

VDCC's argument that the Vermont legislature did not intend or contemplate that it would undergo the same process of scrutiny twice does not hold up when we compare the licensing statute with the development credit corporation statute. Although not expressly stated by VDCC, it appears that VDCC wants us to interpret 8 V.S.A. §§ 2201, *et seq., in pari materia* with 8 V.S.A. §§ 1801, *et seq.* This we cannot do.

A plain reading of the licensing statute reveals, in pertinent part, at least the following:

a) Any person, partnership, association or corporation not within the exceptions must obtain a license to lend money at greater than twelve percent (12%) interest per annum. VDCC is not within the exceptions. See 8 V.S.A. § 2201.

b) Lenders who make loans secured by real estate are subject to specific limitations. VDCC makes loans secured by real estate. See 8 V.S.A. § 2201a.

c) Minimum liquid assets must be on hand. We do not know whether VDCC meets this requirement. See 8 V.S.A. § 2202(c).

d) Approval of the licensee requires specific findings by the Commissioner of Banking and Insurance pertaining to financial responsibility, experience, advantage to the community, and the

---

**3.** Not only must Sales Finance Companies and Insurance Premium Finance Companies obtain a license under 8 V.S.A. § 2201, they must also obtain separate licenses under 9 V.S.A. §§ 2352 and 2402 and 8 V.S.A. § 7002 respectively.

availability of a certain amount of liquid assets. We do not know whether VDCC can satisfy these requirements. See 8 V.S.A. § 2204. Contrast the less stringent standards of 8 V.S.A. § 1803.

e) An application may be denied. See 8 V.S.A. § 2205. Compare 8 V.S.A. § 1803.

f) A denial of an application may be appealed. See 8 V.S.A. § 2205. (No comparable provision in 8 V.S.A. § 1801, *et seq.*)

g) The Commissioner of Banking and Insurance may demand an additional bond. See 8 V.S.A. § 2207. (No comparable provision in 8 V.S.A. § 1801, *et seq.*)

h) The license must be renewed each year. See 8 V.S.A. § 2209. Compare 8 V.S.A. § 1803.

i) The license may be revoked. See 8 V.S.A. § 2210. (No comparable provision in 8 V.S.A.. § 1801, *et seq.*)

j) The commissioner of Banking and Insurance may conduct examinations. See 8 V.S.A. § 2214. Compare 8 V.S.A. § 1803.

k) An annual report must be filed by each licensee. See 8 V.S.A. § 2216. Compare 8 V.S.A. § 1803.

l) Specialized lenders must file for a license under § 2208. See 8 V.S.A. § 2230.

A plain reading of 8 V.S.A. §§ 1801–1804 reveals, in pertinent part, that:

a) Its purpose is to promote financial assistance when and to the extent such financing lies beyond the prescribed limits of banks of deposit; to research and counsel; to make inquiry into ways and means of improving, promoting, and increasing the general welfare of the state and its citizens;

and to help return to maximum productivity non-producing assets. See 8 V.S.A. § 1801.

b) A development credit corporation has all the general and specific powers of other Vermont corporations, limited only by its charter. See 8 V.S.A. § 1802.

c) Prior to the granting of a charter to a development credit corporation, the Commissioner of Banking and Insurance must make a determination of the convenience and advantage to the State of Vermont by the particular development credit corporation. See 8 V.S.A. § 1803.

d) An annual examination must be conducted. See 8 V.S.A. § 1803.

e) The development credit corporation is an institution of public welfare. See 8 V.S.A. § 1804.

 Identifying the object or purpose of the legislation is more important than identifying the subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other. The purpose of 8 V.S.A. §§ 2201, *et seq.*, is to regulate lenders of money; of 8 V.S.A. §§ 1801, *et seq.*, to regulate development credit corporations specifically, which engage in a variety of activities in addition to lending money.[4] The former statutory scheme addresses the problem of higher interest rates; the latter the advancement of industry in Vermont. When statutes have significantly different purposes, the statutes should not be read *in pari materia, United Shoe Workers of America AFL–CIO v. Bedell*, 506 F.2d 174 (D.C.Cir.1974).

Nor does this case involve an unforeseen problem, but rather an unforeseen entity. Although it did not foresee VDCC as a specific category of lender, the legislature

---

4. VDCC's Articles of Association list seven categories of activity among its purposes: (1) to provide financial assistance; (2) to assist by research and counsel; (3) to conduct ex parte inquiry; (4) to discover ways and means to augment the taxable potential of the State; (5) to obtain property; (6) to borrow money; (7) to engage in other business necessary and incidental for its purpose.

With the exception of its tax-exempt status by virtue of 8 V.S.A. § 1804, VDCC seems to have purposes generally indistinguishable from similar profit-making corporations under 11 V.S.A. §§ 1801–2216.

clearly addressed the problem, namely, the regulation of entities that lend money at interest in excess of the statutory rate. Furthermore, 8 V.S.A. §§ 2201, *et seq.*, is a more detailed and comprehensive regulatory scheme than 8 V.S.A. §§ 1801, *et seq.*, and embraces other licensed lenders. We see no reason to exclude VDCC from its grasp.

Counsel for VDCC also argues that because it is an institution of public welfare, it should not be required to obtain a license under 8 V.S.A. §§ 2201, *et seq.* We can discover no authority for this argument. On the contrary, VDCC operates and behaves like any other lender in the State of Vermont, except possibly for its tax-exempt status. Like similar entities throughout Vermont, institutions of public welfare are subject to the rule of law.

As a subsidiary of its public purpose argument, VDCC contends that interpreting 8 V.S.A. § 2201 as applicable to it is absurd and irrational because the result would be to void an overdue loan from the debtor to VDCC.

The result of voiding the loan to VDCC is undeniably harsh. It is a presumption of statutory construction that no unjust or unreasonable result was intended by the legislature. *Montpelier Savings Bank v. Mitchell*, 122 Vt. 85, 165 A.2d 369 (1960). For this Court, however, to imply that the law must be other than what it plainly is because the penalty strikes us as unfair or excessive would be to elevate ourselves above a co-equal branch of government, in presumptuous disregard of the separation of powers. We must hold that the Vermont legislature meant what it said.[5] The remedy for a harsh law is not in judicial interpretation but in statutory amendment. See generally, *State v. Duggan*, 15 R.I. 403, 6 A. 787 (1886).

We cannot hold that requiring VDCC to obtain a license under 8 V.S.A. § 2201 is absurd or irrational. "Absurd" is defined as meaning "ridiculously incongruous, unreasonable, or meaningless." "Irrational" means "contrary to reason, illogical." See, *e.g., American Heritage Dictionary*, 2nd College Edition. To hold that the result in this case is absurd or irrational requires us to impute no purpose to the legislature when they decided to penalize lenders who lend amounts in excess of a statutory rate of interest without a license. The United States Supreme Court in *Griffin*, 102 S.Ct. at 3252, 73 L.Ed.2d at 983, citing *Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930), points out:

> Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such cases the remedy lies with the law-making authority.

In the absence of inadvertence, lack of clarity, or statutory conflict, we must find that the Vermont legislature deliberately produced the result. Compare *State v. Carpenter*, 138 Vt. 140, 412 A.2d 285 (1980).

VDCC's final argument is that the legislative history does not show VDCC to be within the licensing statute, nor does the Department of Banking and Insurance understand it to require a license. We have held that this statute is clear and unambiguous. When statutory language is clear and unambiguous, the Courts of Vermont need look no further in an effort to determine a contrary intent. See *Cavanaugh*, *supra.*

Although we believe the meaning of the statute is plain on its face, in order to provide a full and fair discussion of the issues the parties allowed the Court to take judicial notice of any regulations promulgated by the Department of Banking and Insurance under 8 V.S.A. § 2231. We found none. In lieu of regulations, VDCC offered an affidavit from the Director of

---

5. The presumption that the legislature intends what it says goes back to early Roman history. "The oldest law of the Romans recognized no will as in existence other than the spoken will, the dictum. What is not spoken is not willed and *vice versa*. Only that is will that is spoken." 2 Danz Geschichte des Romischen Rechts § 142.

Bank Regulations of the Department of Banking and Insurance. The director's position, briefly stated, is that VDCC is not required to be licensed under 8 V.S.A. §§ 2201, *et seq.*

■■■ Although we find this affidavit helpful for understanding the position of the Department of Banking and Insurance in this proceeding, it is not dispositive of the issue before us. Although the interpretation and application of regulations by officers, administrative agencies, department heads, and others charged with the duty of administering and enforcing a statute have great weight in determining the operation of a statute, *Eby v. Reb Realty, Inc.,* 495 F.2d 646 (9th Cir.1974), this is not what we have here. See *Chemical Manufacturer's Association,* 105 S.Ct. at 1108, 84 L.Ed.2d at 98 (the view of the agency charged with administering a statute is entitled to considerable deference). VDCC presents us with an unofficial interpretation of a statute developed with a view to this litigation by an official of the Vermont Banking and Insurance Department. We do not find the Department's interpretation persuasive. It appears to be a *post hoc* rationalization of a problem that should have been addressed under properly promulgated banking and insurance rules or regulations, and it contradicts the evidence before us. In his letter to the attorney for VDCC, the director indicates that VDCC is not in the "business of making loans". Yet early in this proceeding VDCC conceded that it was indeed "in the business of making loans."[6] Compare *Clevepak Corporation v. U.S. Environmental Protection Agency,* 708 F.2d 137 (4th Cir.1983) (agency administrative decision in an informal agency action is entitled to great deference, but must be supported by a rational base in administrative record). Even if the interpretation of the Banking and Insurance Department were official, there is an impressive body of law permitting us to make an independent, judicial judgment when the question involves the interpretation of a statute. Compare *Chemical Mfr's Ass'n v. Natural Res. Defense Counsel,* 470 U.S. 116, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985) (when Congress has clearly expressed an intent contrary to that of an agency, the Court's duty is to enforce the will of Congress); *Office Employee's International Union, Local No. 11, AFL CIO v. NLRB,* 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846 (1957) (to the same effect). In order for an agency's interpretation to be accorded deference, it must be consistent with the legislative purpose. See *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35 (2d Cir.1976), citing *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). With these principles in mind, we find the unofficial interpretation of the Vermont Department of Banking and Insurance to be contrary to the plain language and purpose of 8 V.S.A. §§ 2201, *et seq.*

■■■ VDCC further contends that its inclusion in the licensing statutes is not supported by the legislative history. Even assuming it appropriate to turn to the legislative history in the face of clear and unambiguous statutory language, as it is not, we must disagree.

Opinions of individual legislators (and regulators) concerning the meaning of legislation should not be considered conclusive or controlling as to legislative purpose and are not entitled to the same respect as a carefully prepared committee report. *State of Vermont v. Brinegar,* 379 F.Supp. 606, 611 (D.Vt. 1974). A carefully prepared legislative report is not available here, nor is there substantial legislative history on this issue. Counsel for VDCC directs us to a dialogue that occurred between a Vermont State Senator and a Deputy Commissioner of Banking and Insurance during a legislative hearing on the statute at issue. The dialogue substantiates one of the exceptions identified in the statute, confirming that banks do not need a license to lend. Further testimony of the

---

**6.** See also VDCC's Articles of Association, par. 1, which identifies as one of its purposes providing financial assistance when such financing is beyond the prescribed limits of laws governing banks of deposit.

Deputy Commissioner seems to indicate that he believed "if you are not otherwise a retailer or chartered licensed (inaudible) under the Title 8 and 9 to be in the lending business, you should come in for a license." Transcript of Testimony of Dennis Ellingson, Deputy Commissioner of Banking and Insurance, March 28, 1983. This comment did not result in any change to the specific section at issue here, 8 V.S.A. § 2201. In fact, a review of the legislative changes in 1983 reveals that the comment was directed towards § 2230, prohibiting unauthorized loans, and no other section of Title 8, Chapter 73, Vermont Statutes. We are not persuaded by VDCC's argument that the legislative history shows an intent by the legislature to exclude it from the licensing provisions of 8 V.S.A. §§ 2201, *et seq.*

Counsel for VDCC also quotes a comment by the sponsor of the 1983 amendments, who states: " ... from the point of view of its intent [*sic*] is to allow the market to be open, to bring these people under the purview of the Banking and Insurance Agency." VDCC believes this statement reveals the sponsor's intention to bring unregulated entities under the licensing provisions. Even if we accord VDCC the greatest presumption in its favor that the sponsor intended to exclude VDCC from the licensing provisions because it was already regulated under §§ 1801–1804, the 1983 amendments to 8 V.S.A. §§ 2201, *et seq.*, nevertheless do not support the sponsor's supposed intention. None of the eight amendments under Act 35 (1983) changed the character of the entities to be regulated. Indeed, amended § 2201a seems to close the net of regulation on VDCC more tightly because its apparent intent is to regulate mortgage lenders, an area of commercial activity that VDCC performs. What legislative history we have read is, at the very least, inconclusive. Accordingly, as we stated earlier, when the statute is clear the intent must come from the statute itself. Therefore,

It is ORDERED that:

1) The motion of Burke Mountain Recreation, Inc. for summary judgment on its adversary proceeding complaint No. 86–0026 is GRANTED.

2) The motion of Vermont Development Credit Corporation for summary judgment in adversary proceeding No. 86–0076 is DENIED.