## Vermont Development Credit Corp. v. Douglas B. Kitchel

[544 A.2d 1165]

No. 85-546

Present: Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed March 11, 1988

422

*Andrew R. Field*, Montpelier, for Plaintiff-Appellee.

*John H. Fitzhugh* and *Peter H. Zamore* of *Sheehey, Brue & Gray*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant appeals from a judgment against him as guarantor of eight promissory notes on which Burke Mountain Recreation, Inc. was the principal borrower. We reverse in part and affirm in part.

The issues on appeal are: (1) whether the plaintiff, Vermont Development Credit Corporation (VDCC), is required to be licensed under the Licensed Lenders Act, chapter 73 of Title 8 (8 V.S.A. §§ 2201-2235), thus making one of the notes unenforceable under the terms of that Act; and (2) whether defendant is, in effect, a co-signer rather than a guarantor, thereby making six of the notes and guaranties unenforceable because they lack the statutory notice to co-signers mandated by 9 V.S.A. § 102.

On November 12, 1985, the trial court granted plaintiff's motion for summary judgment and entered judgment for plaintiff in the amount of $3,034,107.17 plus interest from October 1, 1985. Defendant's Motion to Amend or Alter Findings and Judgment was denied by the trial court. We conclude that VDCC is required to be licensed under 8 V.S.A. § 2201 and therefore reverse as to the one note that was issued contrary to that statute. In all other respects, the judgment is affirmed.

# I.

VDCC is a nonprofit development credit corporation chartered under chapter 65 of Title 8 (8 V.S.A. §§ 1801-1804). VDCC was created to extend credit to "industrial, agricultural, recreational or other enterprises potentially valuable to the state or its citizens . . . ." 8 V.S.A. § 1801(1). It acts as a conduit through which Vermont banks can make loan funds available to worthy, but high-risk, Vermont commercial and industrial enterprises, and in this manner, it serves to spread the exposure of high-risk loans among a large number of conventional bank lenders. Under 8 V.S.A. § 1803, VDCC is subject to annual audits by the Vermont Department of Banking and Insurance. VDCC has never, however, been licensed under 8 V.S.A. § 2201 of the Licensed Lenders Act.

8 V.S.A. § 2201 provides that

> No person, partnership, association, or corporation other than a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed shall engage in the business of making loans of money, credit, goods or things in action and charge, contract for or receive on any such loan a rate of interest, finance charge, discount or consideration therefor greater than twelve percent per annum without first obtaining a license under this section, section 1921 of this title, or sections 2352 and 2402 of Title 9 from the commissioner.[1]

Prior to April 30, 1980, § 2201 applied only to loans of $1,500 or less, and chapter 73 was entitled "Small Loans." Effective April 30, 1980, the Legislature broadened the act to include licensed lenders generally, eliminating in the process the $1,500 loan limit and exempting banks and the other named entities from the licensing requirement. Development credit corporations were not included in the list of exemptions.

Because of the amounts involved in the promissory notes at issue herein and the dates on which the loans were made, seven of the eight notes[2] in question do not fall within the parameters of 8

---

[1] In 1985, § 2201 was amended by substituting "7002" for "1921." The amendment has no impact upon this case.

[2] The promissory notes were made as follows: on December 1, 1971 for $465,000 at 9% interest per annum and on November 1, 1974 for $100,000 at 11% interest per annum, both guaranteed by defendant; on September 29, 1976 for $352,750

V.S.A. § 2201. The most recent of the eight notes, executed on October 31, 1980, for $175,000 at fifteen percent interest, does meet the specifications of a loan whose lender, unless exempted, would be required to be licensed under 8 V.S.A. § 2201.

■ VDCC contends that the Legislature did not intend to subject development credit corporations to the licensing requirements of § 2201. Plaintiff argues that such a requirement would be redundant because the Legislature has otherwise specially provided for their regulation under § 1803, which authorizes the commissioner of banking and insurance to charter development credit corporations and examine their affairs annually. Plaintiff further contends it would be unreasonable and absurd to construe § 2201 as voiding a loan of VDCC, whose purpose is to serve the general welfare of the state of Vermont. VDCC also argues that the Department of Banking and Insurance itself construes § 2201 as inapplicable to VDCC and that this Court should give deference to such interpretation.

As we have frequently noted, the primary objective in matters of statutory construction is to give effect to the intent of the Legislature. *Hill* v. *Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983). When the meaning of a statute is plain on its face, the intent is to be ascertained from the language of the statute itself. *Lomberg* v. *Crowley*, 138 Vt. 420, 423, 415 A.2d 1324, 1326 (1980). In such case, the statute must be enforced according to its terms and there is no need for construction. *Conway*, 143 Vt. at 93, 463 A.2d at 233. A statute may not be construed or applied, however, in a manner that will render it ineffective or lead to irrational consequences, *In re A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984), nor will we presume that the Legislature intended absurd or irrational consequences. *In re Judy Ann's Inc.*, 143 Vt. 228, 232, 464 A.2d 752, 755 (1983).

We find no ambiguity in § 2201. The language is clear; it exempts "a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed" from its licensing requirement. It does not exempt development credit corporations. As a general rule, when a statute

---

at 10.5% interest per annum, on September 1, 1978 for $400,000 at 10.5% interest per annum, on October 24, 1978 for $600,000 at 10.5% interest per annum, on July 26, 1979 for $222,700 at 12% interest per annum, on October 26, 1979 for $50,000 at 15% interest per annum, and on October 31, 1980 for $175,000 at 15% interest per annum, all guaranteed by defendant and Gloria Chadwick.

explicitly enumerates certain exceptions, no other exceptions will be implied, in the absence of evidence of a contrary legislative intent. *Andrus* v. *Glover Constr. Co.*, 446 U.S. 608, 617-18 (1980); see *Fairbanks, Morse & Co.* v. *Commissioner of Taxes*, 114 Vt. 425, 431, 47 A.2d 123, 126 (1946) ("Where express exceptions are made, the legal presumption is that the Legislature did not intend to save other cases from the operation of the statute."). Since development credit corporations are not included among the exemptions listed in § 2201, we presume that the Legislature intended them to obtain a license before engaging in the business of making loans at a rate of interest in excess of the twelve percent rate designated in the statute. See *Fairbanks, Morse*, 114 Vt. at 431, 47 A.2d at 126. If the Legislature had intended to exempt development credit corporations from the requirement of obtaining a license under § 2201, it could easily have added them to the exemptions listed therein, or have added a provision to chapter 65 to the effect that § 2201 did not apply to such corporations.

■ VDCC argues that to require it to obtain a license under § 2201 would be to subject it to redundant regulation. VDCC points to § 1803, which requires the commissioner of banking and insurance, prior to granting a charter to a development credit corporation, to determine the convenience and advantage to the state of such corporation, and thereafter, annually, or more often, as in the commissioner's opinion shall be deemed necessary, to examine the affairs of the corporation. VDCC contends that this is the only regulatory supervision contemplated for it by the Legislature. We disagree.

A review of chapter 73 (§§ 2201-2235) of Title 8 reveals a much more comprehensive regulatory scheme for licensed lenders than that set forth for development credit corporations in chapter 65 (§§ 1801-1804). Among other things, chapter 73 provides for bonding requirements (§§ 2203 and 2207); minimum liquid assets (§ 2207); investigation into the financial responsibility, experience, character and general fitness of corporate officers and directors (§ 2204); place of business restrictions (§ 2208); revocation of license for cause (§ 2210); annual reports under oath (§ 2216); advertising restrictions (§ 2218); disclosure requirements, and the prepayment of loans without penalty (§ 2225); and the imposition of criminal penalties on all who violate any of the provisions of chapter 73, together with the voiding of any loan when there has

been an offense under the statute (§ 2233). No such requirements are prescribed for development credit corporations in chapter 65.

Further, we note that those entities that are exempted from the licensing requirement of § 2201 are subject to substantial regulatory supervision under other provisions of Titles 8 and 9.[3] By comparison, the regulatory requirements of chapter 65 are virtually nonexistent. In promoting the development of industrial, agricultural, recreational or other enterprises potentially valuable to the state of Vermont, development credit corporations are authorized to provide financing that lies "beyond the prescribed limits of laws governing banks of deposit." 8 V.S.A. § 1801. But for the provisions of chapter 73, there would be an almost complete lack of statutory restraints on such transactions.

 VDCC contends that it would be unreasonable and absurd to construe § 2201 in a manner that would result in the voiding of one of its loans inasmuch as a primary purpose of the corporation is to promote the general welfare of the state of Vermont. Ordinarily, where the meaning of a statute is plain and unambiguous, we will not consider the consequences flowing therefrom, for to do so would be to appropriate to ourselves a legislative function. *Donoghue* v. *Smith*, 119 Vt. 259, 267, 126 A.2d 93, 98 (1956). We recognize, however, that there must be some latitude for adopting a restricted rather than a literal meaning of a statute where acceptance of the literal meaning would lead to absurd results or would thwart the obvious purpose of the statute. *Commissioner* v. *Brown*, 380 U.S. 563, 571 (1965). We will avoid a construction that leads to absurd or irrational results. *Heisse* v. *State*, 143 Vt. 87, 90, 460 A.2d 444, 446 (1983). See *Reed* v. *Rosenfield*, 115 Vt. 76, 79, 51 A.2d 189, 190 (1947) ("We are required to disregard

---

[3] For statutory provisions governing such entities, see generally 8 V.S.A. §§ 501-1709 for banks; 8 V.S.A. §§ 1831-1917 for savings and loan associations; 8 V.S.A. §§ 2051-2087 for credit unions; 9 V.S.A. §§ 3861-3871 for pawnbrokers; 8 V.S.A. §§ 3301-6017 for insurance companies; and 9 V.S.A. §§ 2351-2462 for sellers of merchandise or services. In addition, the Uniform Commercial Code (Title 9A) provides further requirements in connection with bank transactions and the sale of goods.

We also note that development credit corporations are not alone in being singled out for dual regulatory treatment when making loans at a rate of interest greater than twelve percent per annum. When making such loans, sales finance companies are subject to the licensing requirements of § 2201 as well as those of 9 V.S.A. § 2352 and § 2402, and insurance premium finance companies are subject to the licensing requirements of both § 2201 and 8 V.S.A. § 7002.

even the plain letter of a statute if necessary to give it the effect which the Legislature evidently intended it should have.").

In this case, the voiding of one of VDCC's loans would be a harsh result, but it is one that is specifically provided for by the Legislature in 8 V.S.A. § 2233, and thus evidently intended by it. The fact that one of VDCC's principal purposes is to promote the general welfare of the state of Vermont does not guarantee that it could never charge an excessive rate of interest, or engage in unfair practices, and is not, by itself, sufficient justification to exempt VDCC from the licensing requirements of § 2201, particularly in light of legislative policy "to protect the public against unfair and unconscionable lending . . . policies."[4] 8 V.S.A. § 1. In light of these considerations, we do not find it unreasonable or absurd to apply § 2201 to VDCC. Our duty is to give effect to the plain meaning and intent of the legislative enactment. If the law is unfair or unjust, the remedy is to change the law itself through the legislative process. *Riddel* v. *Department of Employment Sec.*, 140 Vt. 82, 88, 436 A.2d 1086, 1089 (1981); *Donoghue*, 119 Vt. at 267, 126 A.2d at 98.

■ With respect to VDCC's argument that the Department of Banking and Insurance construes § 2201 as not applicable to development credit corporations, VDCC submits an affidavit by the Department's director of bank regulation to this effect. VDCC also directs our attention to *In re Village of Hardwick Electric Department*, 143 Vt. 437, 444, 466 A.2d 1180, 1183 (1983), wherein we held that "[u]nless there are compelling indications of error, the construction of a statute by those who are charged with its execution will be sustained on appeal."

The affidavit to which VDCC refers was prepared subsequent to the filing of the instant cause of action, and presented to the trial court in conjunction with VDCC's motion for summary judgment. The affidavit takes the position that development credit corporations are exempt from the requirements of chapter 73 of Title 8 because they are specially chartered under chapter 65, are organized for public purposes, and are adequately regulated by virtue of being subject to annual examination by the Commissioner of Banking and Insurance. The affidavit goes on to state

---

[4] We do not mean to suggest in any way that the terms of the loan in question herein were unfair or unconscionable, but, rather, that it is consistent with the expressed legislative policy that development credit corporations be subject to the regulatory provisions of chapter 73.

that such corporations are "more closely scrutinized and examined than State banks," which are only required to be examined by the Commissioner once every three years, and that the purpose underlying chapter 73 was to bring under regulatory control "certain types of lending activity not theretofore regulated."

Contrary to the statements in the affidavit, chapter 65 provides virtually no regulatory control over development credit corporations. A comparison of the various statutes applicable to lending institutions leads one inevitably to the opposite conclusion from that expressed in the affidavit. Other than providing for annual examinations by the Commissioner, the four statutory sections of chapter 65 impose no restrictions on such corporations once they are chartered. All other lending agencies, however, are subject to extensive regulation. The fact that an entity is organized and exists to serve the public welfare does not exempt it from the rule of law. In light of the clear language of the statute and the erroneous view of the Department as to the extent of its regulatory control over development credit corporations, we are unable to accept the statutory construction of the Department.

■ VDCC argues also that legislative history supports its view that the intent of chapter 73 is to bring previously unregulated lending entities under the regulatory purview of the Commissioner of Banking and Insurance. In support of its argument, VDCC cites testimony given during legislative hearings to this effect. The short answer to this argument is that a statute that is plain on its face is not subject to construction but must be enforced according to its express terms. *In re 66 N. Main St.*, 145 Vt. 1, 3, 481 A.2d 1053, 1055 (1984). Since we have concluded that the provisions of § 2201 are clear and unambiguous on their face, we see no need to consider the legislative history. See *United States* v. *Oregon*, 366 U.S. 643, 648 (1961); *State* v. *Brinegar*, 379 F. Supp. 606, 610 (D. Vt. 1974). We note, however, that the testimony and statements of legislative witnesses and individual legislators cited by VDCC are inconclusive at best, and, standing alone, "have never been regarded as sufficiently compelling to justify deviation from the plain language of a statute." *United States* v. *Oregon*, 366 U.S. at 648. See *Andrews* v. *Lathrop*, 132 Vt. 256, 260, 315 A.2d 860, 862 (1974) ("No cases have been brought to our attention in which the courts of this State have ever found such testimony to be within the meaning of legislative history for the determination of purpose.").

In sum, the plain meaning of § 2201 evinces a legislative intent to subject development credit corporations to its licensing requirement. The result of such requirement is not redundant regulation, nor is the result irrational or absurd. Further, for the reasons stated, we are unable to accept the statutory construction proffered on behalf of the Department. Accordingly, we hold that the October 31, 1980 note in the amount of $175,000, having an interest rate of fifteen percent, was issued in violation of the Act and is void under the terms of the Act. The decision of the trial court to the contrary must be reversed.

## II.

Defendant also claims that six of the notes are unenforceable because of the lender's failure to provide the notice to co-signers required by 9 V.S.A. § 102. That statute provides that if a lender requires the signature of an obligor jointly and severally, the instrument must contain the following bold-type notice:

> NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

This provision became effective on July 1, 1975. 1975, No. 106, § 3. Six of the notes were executed after July 1, 1975 and therefore come within the purview of § 102.

We note that the Legislature has provided no mechanism for the enforcement of 9 V.S.A. § 102. "Statutes which provide no means for enforcement are frequently held too incomplete and imperfect for practical enforcement." *Employers Mut. Liab. Ins. Co.* v. *Carson*, 100 Ga. App. 409, 410, 111 S.E.2d 918, 919 (1959). Further, statutes that result in the imposition of a penalty or forfeiture are not favored and will be strictly construed. *State* v. *Aldrich*, 122 Vt. 416, 422, 175 A.2d 803, 807 (1961). The adoption of defendant's position would result in the imposition of a heavy penalty on VDCC for noncompliance with the notice requirement. At this point, we do not know that the Legislature intended unenforceability as the sanction for noncompliance with the notice requirement of § 102, or what the Legislature might have had in

mind as a sanction. Where no penalty has been imposed by the Legislature, we will not adjudicate one into existence.

 Further, we disagree with defendant that he is a co-signer and thus entitled to the notice prescribed by § 102. Defendant argues that several of the guaranties obligate defendant and another individual, Gloria Chadwick, jointly and severally, and that, although not expressly denominated as such, a fair reading of the notes and guaranties together indicates that defendant, as guarantor, and Burke Mountain Recreation, Inc., as debtor, were liable jointly and severally as well. Defendant maintains that when a guarantor's obligation is as direct and primary as the principal debtor's, the guarantor's and the principal debtor's liabilities are joint, requiring notice under § 102. We disagree.

This Court has already, albeit in dicta, distinguished between "co-signers" and "guarantors."[5] In *R. Brown & Sons, Inc.* v. *Credit Alliance Corp.*, 144 Vt. 142, 473 A.2d 1168 (1984), plaintiff corporation executed two promissory notes with defendant, and individual plaintiffs signed personal guaranties for each note. Plaintiff corporation later defaulted on the notes. The individual plaintiffs contended that as to them the notes were void because they did not comply with the notice requirements of 9 V.S.A. § 102. This Court held that the issue had been waived because not affirmatively pled, but noted that even if the plaintiffs had followed the correct procedure, "9 V.S.A. § 102 applies only to co-signers of notes" and "the individual plaintiffs signed the corporation's notes not as co-signers, but as . . . guarantors." *Id.* at 146, 473 A.2d at 1170.

In many respects, a guarantor is a person whose obligation is very close legally to that of the maker of the note, since the guarantor is liable for another's defaulted debt. Yet, despite this similarity, the guarantor owes no payment until the maker has defaulted, and if required to make payment to the lender, the guarantor is entitled to seek reimbursement from the maker. Thus, a guarantor is not jointly and severally liable with the

---

[5] A co-signer signs with the maker of a note and is "jointly and severally liable" with the maker; a co-signer may be sued separately on the entire obligation. A guarantor, on the other hand, has a secondary liability for another's debts or performance in the event of nonperformance, by the principal obligor. Black's Law Dictionary 634, 751 (5th ed. 1979). See L. Simpson, Handbook on the Law of Suretyship 19-22 (1950); A. Stearns, The Law of Suretyship 58-59, 70 (5th ed. 1951).

maker. 9 V.S.A. § 102 indicates that notice must appear on the note itself when the lender requires the signature of an obligor jointly and severally. The statute does not require such notice on guaranty agreements. Since defendant is a guarantor, not a co-signer, and may not be held jointly and severally liable with the maker, Burke Mountain Recreation, Inc., the provisions of § 102 do not apply to defendant.

*Reversed as to the $175,000 note dated October 31, 1980; affirmed in all other respects.*