STATE *v.* ESTATE OF WILLIAM TARANOVICH.

(68 A2d 796)

May Term, 1949.

Present: SHERBURNE, C.J., JEFFORDS, CLEARY and BLACKMER, JJ.

Opinion filed October 4, 1949.

*Lawrence & O'Brien* for the Estate, appellant.

*Clifton G. Parker,* Attorney General, for the State, appellee.

SHERBURNE, C. J. At a court of inquiry before the probate court for the district of Rutland instituted by the selectmen of the town of Pittsford, and held on July 27, 1939, under the provisions of P. L. 5552-5561, William Taranovich was found to be insane and dangerous, and it was further found that he was the owner of a farm in Pittsford; that he had a wife and ten children; that the income from the farm was a monthly milk check which averaged $225.00; and that the expenses of operating the farm and the support of his family amounted to $323.17 per month. Whereupon he was ordered to be removed to the Vermont state hospital at Waterbury, to be there supported at the expense of the State, where, except for a short period not here material, he remained until his death on April 11, 1946. After his decease the State presented for allowance by the commissioners upon his estate a claim for the cost of his maintenance in the hospital during his confinement there, pursuant to P. L. 3999-4002. From the disallowance of the claim by the commissioners an appeal was had by the State to the county court, and a hearing was there had on an agreed statement of facts, resulting in a judgment for the State to recover the amount of its claim. An exception to the judgment was taken by the defendant estate, and the case is here thereon.

P. L. 5552 provides: "An insane person residing in the state shall be supported at the Vermont State Hospital for the Insane or at the Brattleboro Retreat, at the expense of the state, when the income of such insane person and the earnings of the husband or wife and minor children of such insane person are not sufficient for the support of such person and that of the husband or wife and minor children." P. L. 5553 provides for a court of inquiry before the probate court. P. L. 5554 provides that such court "upon adjudicating such person to be insane and dangerous, and after inquiry as to the income of such insane person and of the persons legally chargeable for his support, may order that such insane person be supported in whole or in part in a hospital for the insane at the expense of the state."

P. L. 5552-5554, except for some later amendments not here material, originated in No. 89 of the Acts of 1898, entitled "An Act for the Relief of the Families of Insane Persons." A somewhat similar act, also entitled "An act for the Relief of the

Families of Insane Persons", was enacted in 1870 by No. 33 of the Acts of that year. This was amended by No. 68 of the Acts of 1874, and substantially reenacted by sections 2885-2887 of the Revised Laws. These sections were repealed by section 9 of No. 42 of the Acts of 1886, when the duty of towns to support a pauper was changed and made to depend upon the basis of his residence and not upon his settlement as theretofore. Under the provisions of this earlier act, as amended, an insane person, whose annual income, together with the earnings of his wife and minor children, was not sufficient for the support and maintenance of himself and his wife and minor children, upon complaint of the wife, could be ordered supported by the town of his settlement at the Vermont Asylum for the insane, and such town might use and control so much of such insane person's estate and property and the earnings of his wife and children, as should be in excess of the expense of supporting and maintaining the wife and children. An insane person committed under this statute was not a pauper, but a person with a limited estate, who in time might become a pauper, if his continued support at the asylum were charged upon his estate. This statute was no part of the pauper law, and was beneficial to the town of legal settlement, as it vested in such town the income of the insane person's estate above the support of the wife and children, and enabled the town to preserve the property and prevent the family from becoming paupers. *Londonderry* v. *Babbitt,* 54 Vt 455. The same reasoning applies to P. L. 5552-5554. While the income of the insane person is not now vested in the town, the retention of it by the family is beneficial to the town in preventing the family from becoming paupers.

These sections are a part of chapter 230, which has the heading "Vermont State Hospital for the Insane," and are under the sub-heading "Insane Person, not Pauper, May be Supported by State". The provisions of these sections under a similar chapter heading and sub-heading substantially appear in sections 3267 and 3268 of chapter 148 of the Vermont Statutes of 1894, in sections 3787 and 3788 of chapter 168 of the Public Statutes, and in sections 4342 and 4343 of chapter 188 of the General Laws.

Sections 3999-4002 of the Public Laws are a part of chapter 163 under the chapter heading "The Insane Poor". The first section in this chapter is 3981 and comes under the sub-heading "Insane State Paupers", and provides: "Insane persons in a town, destitute of the means to support themselves, and not having rela-

tives in the state bound by law to support them, and insane persons whose estate or property does not exceed three hundred dollars shall be supported by the state, while in a hospital for the insane." Under the subheading "Support of the Insane Poor, Contribution", section 3999 provides that the auditor of accounts shall annually compute the cost of maintaining insane persons at the State hospital. Under section 4000 the auditor is to annually ascertain if such persons have estate or property in excess of $300.00 out of which the cost of their support may be collected, and to keep an account of such cost. Section 4001 provides: "The account so kept of the expense for each insane person so supported shall be a charge against such person and his estate, and the amount shall be collected by the auditor whenever there is property or estate in excess of three hundred dollars of the person against whom the charge stands, out of which it may be collected; but upon the death of a person who has been so supported, any estate of which he dies seized or possessed shall be liable for such charges as may have accrued prior to his death." Section 4002 provides that claims therefor shall be presented against the estate of a deceased person, and shall be allowed by the commissioners upon his estate. Sections 3999-4002 substantially originated in No. 105 of the Acts of 1906, entitled "An Act to provide for the support of the Insane Poor." The provisions of these sections, under a similar chapter heading and sub-heading, substantially appear in sections 3731 and 3732 of chapter 165 of the Public Statutes, and in sections 4288 and 4289 of chapter 185 of the General Laws.

The sole question here is whether the provisions of sections 3999-4002 of the Public Laws apply to an insane person like Taranovich, committed under the provisions of sections 5552-5554. The defendant estate contends that they do not.

Before discussing this question one further section of the Public Laws should be noted. P. L. 5558 provides: "If an insane person supported at the expense of the state in a hospital for the insane had, at the time of his commitment, or thereafter acquires, real or personal estate, or a pension or annuity, the same shall be appropriated towards the support of such person in such hospital except as otherwise provided." Attention is called to the words "except as otherwise provided" at the end of this section. This section originated in section 1 of No. 20 of the Acts of 1890, section 5 of which provided that the act should not repeal the provisions of

No. 89 of the Acts of 1888, from which P. L. 5552-5554 are derived as we have seen.

The fundamental rule for the construction of statutes is to ascertain the intent of the Legislature. This intent must be ascertained from the act itself, if the language is plain. But when the language used is doubtful in meaning, the true meaning may be ascertained by considering it in the light of all its provisions, the object to be accomplished by its passage, its title, preexisting legislation on the same subject and other relevant circumstances. A statute is to be so construed as to carry out the intent of the Legislature, though such construction may seem contrary to the letter of the statute. When the provisions of a law are inconsistent, effect must be given to those which harmonize with the context and the apparent intent of the Legislature. *Doubleday* v. *Stockbridge,* 109 Vt 167, 172, 194 A 462, and cases cited.

P. L. 4001 is inconsistent with P. L. 5552-5554. An insane person may be committed at the expense of the State under sections 5552-5554, although having considerable property if the income is all needed for the support of his wife and minor children, but under section 4001, if that section applies, the auditor is required to collect the cost of his support whenever there is property or estate in excess of $300.00. Then too, if section 4001 applies relative to collecting such cost after the death of the insane person, such commitment is merely on credit during the lifetime of the insane person, and the relief of the family is merely temporary, and its pauperization merely postponed.

There can be little doubt about the intent of the Legislature as expressed in sections 5552-5554, but if there were any, the history of the legislation, the titles used in the various acts, the arrangement followed in the several revisions of the statutes, and the object to be accomplished are convincing that sections 3999-4002 were not intended to apply to an insane person committed under the provisions of sections 5552-5554, except where he outlives his wife and leaves no minor children at his decease, and we so hold.

Our attention is called to P. L. 5555, that the provisions of chapter 163 relative to the commitment of insane state paupers shall apply to the commitment of insane persons in so far as such provisions are not inconsistent with the two preceding sections. Doubtless this section refers to the more explicit matters of pro-

cedure in that chapter relative to commitments. So far as a recovery for the support of an insane person committed under the provisions of the two preceding sections is concerned, chapter 163 does not apply because inconsistent therewith as we have seen.

Our attention is called to the case of *State* v. *Ikey's Estate,* 84 Vt 363, 79 A 850, Ann Cas 1913A, 575, in support of the State's case. That was a case where a person held in prison on the charge of murder was not indicted by the grand jury by reason of insanity, and was ordered to be confined in the State hospital at the expense of the State for want of estate sufficient for that purpose, under the provisions of P. S. 2328, now V. S. 2461, Rev. of 1947. At his decease he left a considerable estate, and the State was allowed to recover the expense of his support. It was held that neither the nature of his confinement nor his relation to the State under it was different from that of any insane pauper removed to one of the asylums in the State for the insane. This case is not in point. Here Taranovich's relation to the State under his confinement was different from that of an insane pauper in the absence of a showing that he survived his wife and left no minor children.

The agreed statement is silent as to any increase in Taranovich's property, or as to any change in his family that would lessen the cost of its support during his confinement. The only necessary inference is that his wife and children became older during that period. As to whether the order as to commitment at State expense could have been modified because of any such change we express no opinion.

*Judgment reversed, and judgment for the defendant estate without costs. To be certified to the Probate Court.*