In re Richard E. HEARN, Debtor.

Richard E. HEARN, Plaintiff,

v.

MARK H. WENTWORTH HOME FOR CHRONIC INVALIDS, Defendant.

Bankruptcy No. 94–10325.
Adv. No. 94–1051.

United States Bankruptcy Court,
D. Vermont.

Nov. 16, 1994.

680

Lisman & Lisman, Burlington, VT, for Richard E. Hearn ("Hearn").

Wilson Powell Lang & Faris, Burlington, VT, for Mark H. Wentworth Home For Chronic Invalids ("Wentworth").

## MEMORANDUM OF DECISION ON MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD, Bankruptcy Judge.

This adversary proceeding[1] involves a Chapter 11 debtor who borrowed funds from a lender who was not licensed under statute to lend by the State of Vermont. Hearn seeks to avoid the loan. Wentworth, an assignee of the original promissory note, opposes. Both parties filed Rule 56 motions. At hearing, we denied summary judgment and reserved decision on the licensed lender statute.

The issue to be decided is whether new legislation changing the penalties for violating the Vermont licensed lender statute

should be applied retroactively to the loan. We hold that the statute should be applied retroactively because it is a reduction in a penalty that, under Vermont law, applies retroactively.

## BACKGROUND

In 1983, the Home for Aged Women ("HFAW"), a New Hampshire nursing home facility, entered into a loan agreement for $500,000 with Capital City Press, Inc. ("CPC"), a Vermont corporation with a principal place of business in Montpelier. HFAW did not register as a licensed lender under 8 V.S.A. § 2201 *et seq.* Under the old 8 V.S.A § 2233, a loan made in violation of § 2201 was "... void and the lender shall have no right to any principal, interest, or charges whatsoever."[2] At the time of the CPC loan, Hearn had no ownership interest in CPC; however, he was involved in arranging the loan. The loan was closed and debt service was paid from 1983 to 1987. This loan is a commercial loan.

In 1987, Hearn formed J.H. Acquisition Corporation and purchased CPC in a leveraged buyout. When the buyout occurred, HFAW called in the CPC loan, which resulted in financial difficulties for Hearn. Later, HFAW agreed to lend approximately $142,000 to Hearn as part of the buyout. The loan required the personal signatures of both Hearn and his wife, a second mortgage on

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by Fed.R.Bankr.P. 7052.

2. 8 V.S.A. § 2201 provides: "{n}o person, partnership, association, or corporation other than a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed shall engage in the business of making loans of money, credit, goods or things in action and charge, contract for or receive on any such loan a rate of interest, finance charge discount or consideration therefor greater than twelve percent per annum without first obtaining a license under this section, section 7002 of this title, or sections 2352 and 2402 of Title 9 from the commissioner."

The pre 1987 version of 8 V.S.A. § 2233 provided: "Any person, partnership, association of corporation and the several members, officers, directors, agents and employees thereof who shall violate or participate in the violation of any provisions of this chapter shall be imprisoned not more than two years, or fined not more than $500.00 or both. Any contract of loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes an offense under this section, shall be void and the lender shall have no right to collect or receive any principal, interest or charges whatsoever."

This provision was amended in 1987 to provide "... {H}owever, in the case of commercial loans, the making or collections of which shall involve any violation of the provisions of this chapter, the lender shall have no right to collect or receive any interest or charges whatsoever, but shall have a right to collect and receive principal."

Hearn's residence, and an interest rate which began at 12% and increased after 60 months to 15% per annum.

On December 2, 1987, the loan for $142,800 closed. Mr. and Mrs. Hearn executed a mortgage deed and mortgage note in favor of HFAW in Burlington, Vermont. HFAW wired $140,000 to the account in Burlington, Vermont. Of the $140,000, $43,375 was used to discharge the Hearns' equity mortgage loan to Vermont Federal Bank on their home in Shelborne, Vermont. Both the discharge and the second mortgage from Mr. & Mrs. Hearn in favor of HFAW were recorded. The balance of the $140,000 was used to invest in JH Acquisition Corporation, which later purchased CPC. At closing, CPC paid off the HFAW loan of $500,000.

HFAW ceased its operations sometime between 1989–1991. As a result, Wentworth agreed to care for some of HFAW's patients. On February 13, 1991, as part of the arrangement, HFAW assigned its interest in the loan to Wentworth. On October 7, 1993, Wentworth instituted a foreclosure action against Hearn in Chittenden Superior Court. On May 20, 1994, Hearn filed a voluntary petition under Chapter 11. Later, the Chittenden Superior Court rendered an entry order, stating that: 1) the 1990 Amendments to Vermont's licensed Lender law cannot save what may have been a "void" loan; 2) if the loan was void, it was not saved by Wentworth's possible entitlement to holder-in-due course status; 3) the court could not determine if the loan was one made in Vermont; and, 4) the court could not determine if HFAW was "in the business of making loans" or whether this was just a casual transaction. The parties also dispute these issues.

On August 19, 1994, Wentworth filed a motion under 11 U.S.C. § 362 seeking to be able to pursue the pending litigation in Chittenden Superior Court. On September 12, 1994, Hearn filed opposition papers to the motion. Hearn filed his motion for summary judgment on September 13, 1994, and Wentworth filed its cross-motion for summary judgment on October 14, 1994. We denied both motions from the bench.

## DISCUSSION

■ F.R.Civ.P. 56(c), applicable here under F.R.Bank.P. 7056, provides that summary judgment shall be rendered if, when the record is viewed in a light most favorable to the non-moving party,

> the pleadings, depositions, answers to interrogatories, and admissions to file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law.

The primary purpose in granting summary judgment is to avoid unnecessary trials where no genuine issue of material fact is in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eastman Machine Company, Inc. v. United States,* 841 F.2d 469 (2d Cir.1988). "The very mission of summary judgment procedure is to pierce the pleading and to assess the proof in order to see whether there is a genuine need for a trial." (1963 Advisory Committee Note to Rule 56(e)).

■ The party moving for summary judgment has the burden of clearly establishing that no relevant facts are in dispute. *Celotex,* supra. Only after the moving party has met its initial burden must the opposing party set forth specific facts showing that there's a genuine issue for trial and that the disputed fact is material. *Pereira v. Centel Corp. (In re Argo Communications),* 134 B.R. 776, 800 (Bankr.S.D.N.Y.1991), citing, *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

Upon our review of the motion papers and other supporting materials, we concluded that summary judgment for either party is inappropriate. Neither party met its initial burden under Rule 56(c) of showing that no material facts are in dispute.

The arguments of the parties follow. Hearn asserts that the entire loan is unenforceable because HFAW failed to obtain a lender's license pursuant to 8 V.S.A. § 2201. Hearn argues that HFAW was required to obtain a license because the loan was negoti-

ated and made in Vermont, HFAW engaged in the business of making loans, and that the loan was not a commercial loan. Hearn also argues that, even if the loan was commercial in nature, the principal of the loan cannot be collected because the Amendment to 8 V.S.A. § 2233 cannot be applied retroactively.

Wentworth argues that compliance with Vermont law was not required because the loan was negotiated out of the state. It maintains that even if a license had been required, lack of such a license is not a defense that can be raised against Wentworth due to the amendment. This act previously provided that any loan made in violation of the Licensed Lender Act "shall be void, and the lender shall have no right to collect or receive any principal, interest or charges whatsoever." The 1987 amendment provides ". . . {H}owever, in the case of commercial loan, the making or collection of which shall involve any violation of the provisions of this chapter, the lender shall have no right to collect or receive any interest or charges whatsoever, but shall have the right to collect and receive principal." Wentworth relies on the provision in Vermont's savings statute, 1 V.S.A. § 214(c) to support its argument that this amendment should be applied retroactively. Wentworth claims that the loan falls within the purview of the statute because it is commercial in nature.

 We begin our analysis with the relevant provision of the amendment to 8 V.S.A. § 2233 and the Vermont Savings Statute. As a result of the amendment, a commercial loan entered into in violation of this act is no longer void, and principal, but not interest and charges, may be collected. The legislature clearly intended to mitigate the harsh penalties formerly imposed on commercial lenders. See *Burke Mountain Recreation, Inc. v. Vermont Development Credit Corp. (In re Burke Mountain Recreation, Inc.)*, 64 B.R. 799 (Bankr.D.Vt.1986), for an example of the harsh penalties. "The amendment of the statute shows [a] legislative intent to change the effect of existing law." *Montgomery v.` Brinver Corp.*, 142 Vt. 461, 457 A.2d 644 (1983).

 Wentworth argues that the legislature intended that the amended, lesser penal-

ty, be imposed retroactively. We agree. Under Vermont's savings statute, the amendment or repeal of an act shall not, except as provided in subsection (c), "[a]ffect any violation of the act ... amended or repealed, ... prior to the effective date of the amendment or repeal." 1 V.S.A. § 214(b)(3). Where, however, an amendment reduces the punishment for an offense, Vermont law provides the following ameliorative amendment:

> If the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of the amendment.

1 V.S.A. § 214(c).

In *State of Vermont v. Mark Flagg*, 624 A.2d 864, 160 Vt. 141, 4 Vt.L.W. 122, at 123 (1993), the Vermont Supreme Court held that ". . . the purpose of Sec. 214(b) and Sec. 214(c) is to ensure ... that outdated, harsh penalties are not imposed after the legislature has deemed them no longer necessary or appropriate." "Because the penalty for defendant's conduct has been reduced, the plain language of Sec. 214(c) requires retroactive application of the reduced penalty." *Id.*

The new law should be applied retroactively under § 214(c) because 8 V.S.A. § 2233 of 1987 reduced the penalty that could be imposed. Section 214(c) applies where "the penalty or punishment is reduced." 1 V.S.A. § 214(c). Under the prior law, any act which constituted an offense under section 2201, *et seq.* was void and the lender could not collect or receive any principal, interest or charges, whatsoever. 8 V.S.A. § 2233 (prior to the 1987 amendment). Under the new law, this same conduct carries a reduced penalty for commercial lenders, namely, no collecting of interest and charges. Section 214(c) applies.

 Hearn argues that subsection (c) is operative only before the penalty is "imposed" because a lender's inability to enforce a void loan under 8 V.S.A. § 2233 is not a penalty or punishment which can be "imposed" (as can a penalty of punishment for a criminal offense). To support his argument, Hearn claims that the language of subsection

(c) was intended to be applied in cases where the legislature reduced a criminal penalty or punishment. See, e.g., *State of Vermont v. Mark Flagg*, 4 Vt. 122, 123 (1992). This section, however, did not apply exclusively to penalties sued for, or to penal statutes, but to all pending proceedings in court which depended upon statute law. *Pratt v. Jones*, 25 Vt. 303 (1853). The language of 8 V.S.A. § 2233, on its face, reflects that the penalty is not "imposed" at the inception of the loan, but rather at the time a court determines whether or not the lender should have obtained a lender's license.

■ This is a classical case of statutory construction. The starting point in every case involving statutory construction is the language itself. *Medor v. Lamb (In re Lamb)*, 47 B.R. 79, 12 C.B.C.2d 475 (Bankr. D.Vt.1985).

■ As a general rule, a statute should be read according to its literal terms, *United States v. Locke*, 471 U.S. 84, 93, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64, 75 (1985), unless this renders the statute ineffective or leads to irrational consequences, *In re A.C.*, 144 Vt. 37, 470 A.2d 1191 (1984), leads to an absurd consequence, *State v. Goyet*, 120 Vt. 12, 132 A.2d 623 (1957), or is otherwise demonstrably at odds with the intentions of the statute's drafters. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982).

■ When interpreting statutes, the court is to give effect to the intent of the legislature, *State v. Lund*, 144 Vt. 171, 175, 475 A.2d 1055 (1984). It is this intent that constitutes the law, *Hill v. Commissioner*, 143 Vt. 91, 93, 463 A.2d 232 (1983). If the language is plain, the intent must be ascertained from the language itself, *Lomberg v. Crowley*, 138 Vt. 420, 415 A.2d 1324 (1980); *State v. Estate of William Taranovich*, 116 Vt. 1, 5, 68 A.2d 796 (1949). The primary vehicle for interpreting the meaning of a Vermont statute is the "plain meaning rule." This rule was described recently in *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 529, 496 A.2d 154 (1985). The Supreme Court of Vermont, citing *Heisse v. State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983), said:

The most elementary rule of construction is that the plain meaning of the statute controls. If confusion or ambiguity does not appear, then the statute is not construed, but rather is enforced in accordance with its express terms. (Citation omitted).

We find no ambiguity in 8 V.S.A. § 2233. Its express provisions are clear and unequivocal. We arrive at this conclusion reading the statute in its entirety. See *Philbrook v. Glodgett*, 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975) (the Court, in expounding a statute, must not be guided by a single sentence or a member of a sentence, but must look to the provisions of the whole law and to its object and policy). See also *Clarence Reed, Adm. v. Rosenfield*, 115 Vt. 76, 78 51 A.2d 189 (1947).

■ A plain reading of § 2233 reveals, in pertinent part, that the purpose is to regulate lenders of money. The amendment also reveals the legislature's intent to reduce the harsh penalties in commercial situations where a great deal of money is at stake. The failure to obtain a lender's license does not automatically make the loan void, rather, the penalty is imposed when the lender seeks to enforce his or her interest and the court determines whether or not the lender was required to obtain a license. If a license was required, the court will then impose the penalty in accordance with rule § 2233. This situation is akin to an offside call in football. The penalty is not self-imposed, it is only imposed if the player gets caught and the referee decides to impose a penalty.

Therefore, Hearn's argument that the loan is void *ab initio* is without merit. The loan is not void at its inception. The legislature's decision to allow certain commercial lenders to collect the principal of loans made without a license is a reduction of a penalty or punishment within the meaning of 1 V.S.A. § 214(c). Therefore, the amendment to 8 V.S.A. § 2233 can be applied retroactively to enforce the loan if it is found that the lender was required to obtain a license. This finding is also consistent with Hearn's behavior when HFAW decided to call in the initial loan. If the loan was void at its inception, as Hearn argues, than Hearn should not have

been required to pay off the HFAW loan at all.

■ Although we conclude that the amendment may be applied retroactively to enforce, at least, the principal of the loan, we held at hearing there still exists some material facts and issues that are in dispute. First, it is unclear whether the Home For Aged Women was a "person, partnership, association, or corporation ... engage[d] in the business of making loans of money," 8 V.S.A § 2201, at the time of the transition. If this was merely a casual transaction, than the licensed lender law may not apply. Second, it is unclear whether this transaction was one made in Vermont. Finally, we are not persuaded that the loan was commercial in nature. These disputed issues are best left to disposition at trial.

### CONCLUSION

For the foregoing reasons, both motions for summary judgment are denied. A trial on the merits will be held to resolve the disputed material facts and issues.

Wentworth's counsel shall settle order on five days notice consistent with this Memorandum of Decision.