## Chittenden Trust Company v. Andre Noel Sports, et al.

[621 A.2d 215]

No. 91-449

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 4, 1992

---

*Thomas F. Heilmann* and *Todd D. Schlossberg* of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Plaintiff-Appellant.

*Geoffrey M. FitzGerald* and *John P. Maley* of *Sylvester & Maley, Inc.*, Burlington, for Defendants-Appellees Andre Noel Sports, Andre Noel and Le Chamois Blanc.

*Jesse D. Bugbee* of *Kissane, Yarnell & Cronin*, St. Albans, for Defendants-Appellees Rosemary Noel, Romy's Ltd. and Romy's Alpen Haus.

**Johnson, J.** This is an interlocutory appeal from two superior court orders, one granting summary judgment in favor of defendant debtors and guarantors as to whether plaintiff Chittenden Trust Company (CTC) has the right to obtain a deficiency judgment following its failure to provide notice of the sale of repossessed collateral, and the other dismissing remaining claims that sought damages based on, among other things, allegations that defendants fraudulently transferred some of the collateral after they had defaulted on their loan. We affirm the court's refusal to allow CTC a deficiency judgment, but reverse its decision to dismiss all the remaining claims.

Defendants, various individual and corporate debtors and guarantors who import, distribute and retail exclusive alpine

ski clothing and accessories, executed two promissory notes in June of 1984 evidencing two loans from CTC totaling approximately $800,000. Defendants defaulted on the loans, and in January of 1987, CTC filed suit and secured a writ of attachment on defendants' inventory, accounts receivable, fixtures, and equipment. CTC repossessed some ski apparel pursuant to the writ, but after months of intermittent discussion, the parties failed to agree on how to liquidate the merchandise.

On November 4, 1987, CTC informed defendants that it would pursue the sale of the goods beginning the week of November 2, 1987, and that notification of the specific sale times and places would follow as soon as they were available. On December 23, 1987, the bank informed defendants that a sale of the collateral had been advertised and was being conducted at a certain location. The sale had begun approximately one month earlier, and an enclosed advertisement indicated that the sale would continue through Christmas. CTC netted about $35,000 from the sale of the merchandise.

Eventually, defendants moved for summary judgment, claiming that plaintiff had failed to provide them with proper notice of the sale. The trial court granted the motion, concluding that the notice was improper, and, that therefore, CTC was absolutely barred from obtaining a deficiency judgment. Following a hearing, the court also granted defendants' motions to dismiss the case on the ground that CTC's remaining claims were derivative of, and ancillary to, the deficiency action. The court then stayed further proceedings concerning pending counterclaims, and certified the following questions for this appeal:

1. Did the trial Court err in ruling that on the state of the record hereby presented plaintiff, Chittenden Trust Company, as a secured party, was barred from pursuing its claim for a deficiency judgment against defendant debtors on the grounds that it failed to give defendants prior notification of the time and place of the sale of repossessed collateral in accordance with 9A V.S.A. § 9—504(3)?

2. Did the Court err in its March 21, 1991 Order granting defendants' Motions to Dismiss plaintiff's remaining claims on the grounds that such claims derive from and are part of the claim for a deficiency judgment disposed of by the Court's Orders entered October 30, 1990 and October

31, 1990 where plaintiff failed to make any showing of damages separate and apart from the deficiency on the underlying note?

On appeal, CTC argues (1) that the court erred by granting summary judgment because there are disputed facts concerning whether notice was required in this instance; (2) that even if notice was required, this Court should abandon or narrow the absolute-bar rule it adopted in a prior decision; and (3) that even if it is precluded from obtaining a deficiency judgment, it should be allowed to pursue its other claims against defendants.

## I.

■ ■ CTC's first argument is without merit. A secured party must give "reasonable notification of the time and place of any public sale" of repossessed collateral unless the collateral (1) "is perishable or threatens to decline speedily in value" or (2) "is of a type customarily sold on a recognized market." 9A V.S.A. § 9—504(3). The first exception is applicable where a "quick resale of the collateral would better serve the debtor's interests" and "the time consumed in giving notice might have disastrous consequences" due to the possibility of a sharp price decline. J. White & R. Summers, Uniform Commercial Code § 25–12, at 1222 (3d ed. 1988). This exception rarely applies to chattels. *Rock Rapids State Bank v. Gray*, 366 N.W.2d 570, 573 (Iowa 1985).

■ The reasoning behind the "recognized market" exception is that "the debtor does not need the protection against a self-dealing or dishonest creditor because independent market forces set the sale price which is presumptively 'commercially reasonable.'" J. White & R. Summers, *supra*, at 1222. This exception generally applies to widely traded stocks, bonds or commodities sold in recognized markets, where the prices are fixed and therefore not subject to manipulation by the secured party. *Id.*; *Hertz Commercial Leasing Corp. v. Dynatron, Inc.*, 427 A.2d 872, 876 (Conn. Super. Ct. 1980); *Ocean Nat'l Bank of Kennebunk v. Odell*, 444 A.2d 422, 425–26 (Me. 1982); see generally Annotation, *Nature of Collateral Which Secured Party May Sell or Otherwise Dispose of without Giving Notice to Defaulting Debtor under UCC § 9—504(3)*, 11 A.L.R.4th 1060 (1982).

■ We conclude, as a matter of law, that neither of these exceptions applies in this instance, where no material facts are in dispute. See *Wheeless v. Eudora Bank*, 509 S.W.2d 532, 534 (Ark. 1974) (court held, as matter of law, that used car did not meet either exception). As noted, the repossessed collateral in this case was outdated, high-fashion ski and sports apparel. The prices for the individual garments were set by the bank or its agent, not by a recognized market. Furthermore, CTC had possession of the collateral for over six months without giving proper notice of its sale. See *Rock Rapids State Bank*, 366 N.W.2d at 573 (because collateral was not sold until three weeks after it was turned over to bank, bank failed to show urgency that would preclude proper notice). Notwithstanding CTC's arguments as to the "volatile" nature of the collateral, the continuing negotiations with defendants over how to deal with the collateral, and the nature of the sale, a reasonable factfinder must conclude that proper notice was required here.

## II.

Next, CTC asks us to overrule or limit our holding in *Chittenden Trust Co. v. Maryanski*, 138 Vt. 240, 246–47, 415 A.2d 206, 210 (1980), that reasonable notice is a condition precedent to recovery of a deficiency judgment. We decline to do so.

Neither the Uniform Commercial Code (Code) nor its predecessor, the Uniform Conditional Sales Act (Sales Act), provided a specific remedy for a secured party's failure to notify a debtor of the sale of repossessed collateral, and the vast majority of courts have declined to limit the debtor's remedy to that provided by § 9—507(1). See 9A V.S.A. § 9—507(1) (debtor is entitled to seek recovery of loss caused by secured party's failure to comply with Code provisions); *Liberty Bank v. Honolulu Providoring, Inc.*, 650 P.2d 576, 581 (Haw. 1982) (minority view that § 9—507(1) is debtor's exclusive remedy "has been generally criticized"). The Court in *Maryanski* adopted the "absolute bar" rule, which it stated was the majority rule, because it is in accord with prior Vermont case law under the Sales Act, see *General Acceptance Corp. v. Lyons*, 125 Vt. 332, 336, 215 A.2d 513, 516 (1965), and because strict compliance with the notice requirement is not unreasonable considering that it is one of the few specific requirements in the Code relating to the sale of

collateral. *Maryanski*, 138 Vt. at 246–47, 415 A.2d at 210. CTC argues that this decision is inconsistent with subsequent decisions of this Court, the overwhelming majority of other jurisdictions, and the policies and provisions of the Code. We disagree.

This Court has consistently, and recently, reaffirmed the principle, first articulated in *Maryanski*, that a secured party cannot recover any deficiency from a debtor or guarantor absent reasonable notice. See, e.g., *Vermont Indus. Dev. Auth. v. Setze*, 157 Vt. 427, 430, 600 A.2d 302, 304–05 (1991); *Vermont Nat'l Bank v. Hamilton*, 149 Vt. 477, 480, 546 A.2d 1349, 1351 (1988). Further, notwithstanding CTC's arguments to the contrary, recent decisions by this Court have not undermined the *Maryanski* holding.

In *Allard v. Ford Motor Credit Co.*, 139 Vt. 162, 422 A.2d 940 (1980), decided approximately seven months after *Maryanski*, a debtor brought an action for conversion and unlawful disposition of collateral against the secured party that repossessed and sold his car without giving him notice. This Court held that, in the absence of actual damages, the debtor's recovery was limited to the minimum specified in 9A V.S.A. § 9—507(1). *Id.* at 164, 422 A.2d at 942 (citing § 9—507(1)). This holding merely stands for the proposition that when a debtor brings a separate affirmative action against a secured party for illegal disposition of collateral, and there are no actual damages, the debtor's recovery is limited by § 9—507(1). *Allard* says nothing about defense of a secured party's action to recover a deficiency judgment. See *First State Bank of Morrilton v. Hallett*, 722 S.W.2d 555, 556 (Ark. 1987) (majority position is that § 9—507 is a separate affirmative action by a debtor to recover damages and is not applicable to a creditor's action to recover a deficiency judgment, which depends on whether the creditor has complied with statutory notice and disposition requirements). The nature of the actions and the underlying facts in the other Vermont cases cited by CTC are even more remote than those in *Allard*.

CTC overstates its argument when it claims that the "overwhelming" majority of jurisdictions have rejected the absolute-bar rule, which is fast becoming an "anachronism" in Article 9 jurisprudence. In fact, the courts are "deeply divided" over

what remedy should be accorded to debtors when creditors seek a deficiency judgment after failing to give reasonable notice of the sale of seized collateral. *Fleming v. Carroll Publishing Co.*, 581 A.2d 1219, 1224 (D.C. App. 1990); *Liberty Bank*, 650 P.2d at 581 ("sharp disagreement among jurisdictions as to the proper remedy"). There are three views. Under the "set-off" rule, favored in only a very few jurisdictions, the secured party who fails to give proper notice may nevertheless obtain a deficiency judgment, subject only to a set-off for damages resulting from the lack of notice. *Connecticut Bank & Trust Co. v. Incendy*, 540 A.2d 32, 37 (Conn. 1988). Most jurisdictions have rejected this rule because it places on the debtor the burden of proving damages under § 9—507(1), and thus provides little incentive for creditors to comply with the notice requirement. See *id.*

Perhaps a slight majority of jurisdictions follow the "rebuttable-presumption" rule, under which "the fair market value of the collateral [sold without notice] is rebuttably presumed to equal the amount of the remaining debt." *Bank of Chapmanville v. Workman*, 406 S.E.2d 58, 65 (W. Va. 1991). To recover a deficiency, the secured party must prove otherwise. Some courts have turned to this rule because the remedy provided by the "absolute-bar" rule is punitive in nature, involves a forfeiture, and creates a penalty that has no relation to the "commercial reasonableness" of the sale. *Id.* at 64; *Emmons v. Burkett*, 353 S.E.2d 908, 910–11 (Ga. 1987) (absolute bar rule is harsh and contrary to intent of UCC because debtor may receive windfall and creditor may be arbitrarily penalized).

Many jurisdictions, however, have continued to adhere to the absolute-bar rule, see, e.g., *Wilmington Trust Co. v. Conner*, 415 A.2d 773, 779 (Del. 1980); *Havelock Bank of Lincoln v. McArthur*, 370 N.W.2d 116, 118–19 (Neb. 1985), and at least one jurisdiction has recently abandoned the rebuttable-presumption rule in favor of the absolute-bar rule. See *Hallett*, 722 S.W.2d at 556. These courts point out that allowing a deficiency judgment after repossession of collateral is in derogation of the common law, and, therefore, strict compliance with statutory requirements is a condition precedent to obtaining such a judgment. See, e.g., *Cherry Manor, Inc. v. American Health Care, Inc.*, 797 S.W.2d 817, 821 (Mo. Ct. App. 1990). Viewed in this

light, the absolute-bar rule does not punish, but rather precludes the secured party from invoking the operation of remedial statutory provisions. *Wilmington Trust Co.*, 415 A.2d at 780. Further, although the Code does not contain a provision barring creditors from collecting a deficiency when they have violated notice requirements, it provides that other rules of law may control unless specifically displaced. *Id.* at 779; see 9A V.S.A. § 1—103.

The law of this state, both before and after adoption of the Code, has been to deny deficiency judgments in situations where the creditor has failed to provide reasonable notice of the sale of repossessed collateral. This rule is simple, certain, and easily administered, and it provides greater incentive for creditors to comply with § 9—504(3), which seeks to give debtors an opportunity to protect their interests by taking part in the sale of the collateral. Although we recognize that there are policy considerations and statutory arguments that favor the rebuttable-presumption rule, they are not so compelling as to persuade us to abandon our long-held rule. See J. White & R. Summers, *supra*, § 25–19, at 1245–46 (stating statutory arguments that can be made for either rule); *Westgate State Bank v. Clark*, 642 P.2d 961, 968 (Kan. 1982) (listing arguments supporting each rule). There may be rare instances where the nature of de minimis violations makes invocation of the rule inappropriate, see, e.g., *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181, 185–86 (Iowa 1987) (deficiency judgment not barred where bank sold a bucket of bolts and a broken engine analyzer to bystanders as it was seizing collateral), but this case does not present such an instance. Therefore, the court's first certified question is answered in the negative.

## III.

Finally, CTC argues that even if it has no right to a deficiency judgment, the court erred by dismissing its remaining claims that defendants fraudulently concealed or transferred some of the collateral following their default on the loans. The trial court dismissed the claims, which sounded in breach of contract and statutory and common-law fraud, because they are "inextricably intertwined and functionally indistinct from the defi-

ciency action." The court reasoned that CTC may be entitled to a writ of replevin against defendants or others who may have possession of additional collateral, but that CTC's alleged damages with regard to the remaining claims could be made only by reference to the underlying note. Thus, according to the court, these claims are merely an "end run" attempt by the bank to obtain a deficiency judgment. We conclude that the court prematurely dismissed CTC's remaining claims.

■ A deficiency judgment imposes liability on a debtor for the unpaid balance of a secured obligation after sale of the collateral has failed to yield the full amount of the underlying debt. *In re Pittsburgh-Duquesne Dev. Co.*, 482 F.2d 243, 246 (3d Cir. 1973). "Thus, a proceeding for a deficiency judgment is an attempt to recover something more than and distinct from the security provided by the debtor." *Id.* Accordingly, a creditor who is barred from obtaining a deficiency judgment because of the failure to provide notice of the sale of repossessed collateral is not precluded from seeking to recover collateral that was not repossessed. *Fleming*, 581 A.2d at 1225. For example, as the trial court noted, the creditor is free to initiate a replevin action against the debtor or others with respect to the collateral not repossessed. Recovery of collateral in such a situation is not an award of a deficiency, but merely provides the creditor with the collateral for which it bargained.

■■ If a creditor's suit to recover unrepossessed collateral is not a deficiency action, it follows that a suit seeking damages in the amount of the collateral that the creditor is unable to repossess due to debtor misconduct is also not a deficiency action. See *Dixon v. Borg-Warner Acceptance Corp.*, 368 S.E.2d 800, 802 (Ga. Ct. App. 1988) (no deficiency sought in action for value of collateral which was not, and could not have been, repossessed by secured party); *In re Gerber*, 51 Bankr. 526, 529 (D. Neb. 1985) (creditor barred from pursuing deficiency claim was entitled to remaining collateral or, if unrecoverable, its value). Recovery under either action would be based on the value of the unrepossessed collateral, not the balance of the debt due. Thus, there is no basis for concluding that an action to recover the value of fraudulently conveyed collateral is more "inextricably intertwined" with a deficiency claim than an ac-

tion to recover the property itself. See *Chase Commercial Corp. v. Datapoint Corp.*, 774 S.W.2d 359, 365, 368 (Tex. Ct. App. 1989) (creditor precluded from recovering deficiency permitted to pursue claim against debtor for fraudulent assignment of the collateral).*

Moreover, a distinction that would allow creditors to recover unrepossessed collateral from debtors, but forbid them from recovering the value of such collateral from debtors who have fraudulently transferred the collateral, might encourage debtor misconduct. In any event, it would not further the purposes of the notice provision, which are to allow debtors the opportunity to redeem repossessed collateral or to ensure that proper steps are taken to bring a fair return on the sale of the collateral. *Adams v. B & D Builders & Developers, Inc.*, 144 Vt. 353, 356, 477 A.2d 628, 631 (1984). Finally, such a distinction would frustrate Vermont's fraudulent conveyance statute, 9 V.S.A. §§ 2281–2282, which voids fraudulent conveyances of property made to circumvent the rights of creditors, and which also allows for an award of damages.

None of the cases cited by defendants persuades us that CTC's failure to give notice regarding repossessed collateral bars its fraud claims as to unrepossessed collateral. In *Sedalia Mercantile Bank & Trust Co. v. Loges Farms, Inc.*, 740 S.W.2d 188, 195–96 (Mo. Ct. App. 1987), the court held that the creditor bank could not avoid the consequences of its failure to provide notice of a foreclosure sale by seeking damages for the debtors' previous fraudulent misrepresentation of their financial status in the original financial statement. In that case, the fraud did not directly concern the collateral. There was no proof, or even allegation, that the debtors had fraudulently concealed or transferred collateral to avoid its repossession. The case went to trial, and the creditor failed to prove that the alleged false financial statement led to any monetary loss suffered by the bank. Here, on the contrary, CTC has alleged that defendants' fraudulent conveyances prevented it from repossessing the additional collateral it now seeks.

Defendants also rely on a single, unsupported statement in *Chemical Sales Co. v. Diamond Chemical Co.*, 766 F.2d 364, 369

---

* Abrogated on other grounds by *Greathouse v. Charter Nat'l. Bank-S.W.*, 851 S.W. 2d 173 (Tex. 1992).

(8th Cir. 1985), which suggests that a creditor barred from a deficiency judgment may not seek recovery in excess of the value of the repossessed collateral. Assuming that is the holding of the court, we disagree with it. As noted, the bar against a deficiency judgment does not extend to collateral not repossessed. For the same reason, we reject *In re Boehne*, 82 Bankr. 525 (W.D. Mo. 1988), to the extent that it bars any recovery, regardless of the circumstances, once a creditor sells any collateral without notice. That case, however, can be distinguished on other grounds. There, the creditor was awarded certain personal property, which had secured its loan, and a money judgment for approximately $70,000. The creditor sold the property without proper notice for approximately $27,000. The creditor then attempted to obtain a lien on certain real estate, only to discover that the debtors had recently conveyed the property to relatives for no consideration. The court ruled that the creditor's failure to provide notice of the sale of the collateral precluded it from pursuing its fraudulent conveyance action. *Id.* at 529. Unlike the situation here, however, the debtors' alleged fraud did not concern the collateral for which the parties had bargained.

■■ According to defendants, the fact that CTC claims that the value of the remaining collateral is equal to defendants' remaining liability on the note indicates that CTC's fraud claims are nothing more than an attempt to obtain a deficiency judgment. We disagree. CTC's amended complaint asks the court for compensatory damages, punitive damages, an order voiding the fraudulent conveyances, and an order requiring the holders of the collateral and any profits or proceeds earned therefrom to turn them over to CTC. In any event, regardless of what CTC asks for, it can only recover damages resulting from the fraudulent conveyance of unrepossessed collateral, not the difference between the amount of the note and the money secured through the sale of repossessed collateral. We hold today that a creditor barred from obtaining a deficiency judgment may pursue claims alleging that the debtor fraudulently conveyed unrepossessed collateral to defeat the claims of the creditor. The second certified question is answered in the affirmative.

*The superior court's denial of a deficiency judgment and dismissal of claims on the note are affirmed. The court's dismissal of CTC's remaining claims is reversed to the extent that the claims seek additional collateral or damages because of the fraudulent conveyance of that collateral. The case is remanded for further proceedings consistent with this decision.*