## John A. Klein v. Wolf Run Resort, Inc., et al.

[659 A.2d 1153]

No. 93-365

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 14, 1995

*Jesse D. Bugbee* of *Kissane, Yarnell & Cronin,* St. Albans, for Plaintiff-Appellee.

*W. Owen Jenkins,* Essex Junction, for Defendant-Appellant.

**Johnson, J.** Defendant Wolf Run Resort, Inc. defaulted on an agreement with plaintiff lender and appeals from a decision of the Franklin Superior Court declaring that plaintiff could recover the principal amount of the loan, despite plaintiff's noncompliance with Vermont's Licensed Lenders Law (8 V.S.A. § 2201). We affirm.

Plaintiff lent defendant $120,000 for two years, secured by two parcels of land in Bakersfield and a security interest in certain personal property. Only interest was due until maturity, but early in 1989 defendant defaulted, after paying $4,789.04 in interest, as well as a $2,400 commitment fee. Plaintiff commenced a foreclosure action,

and defendant raised as an affirmative defense plaintiff's failure to obtain a lender's license from the Vermont Commissioner of Banking and Insurance pursuant to 8 V.S.A. § 2201* before making the loan, subjecting plaintiff to the penalty provisions of 8 V.S.A. § 2233. At the time of the loan and the commencement of the suit, § 2233 stated as follows:

> (a) Any person, partnership, association or corporation and the several members, officers, directors, agents and employees thereof, who shall violate or participate in the violation of any of the provisions of this chapter shall be imprisoned not more than two years or fined not more than $500.00, or both.

> (b) Any contract of loan not invalid for any other reason, in the making or collection of which any act shall have been done which constitutes an offense under this section, shall be void and the lender shall have no right to collect or receive any principal, interest, or charges whatsoever; *provided, however, in the case of any loan or extension of credit described in 9 V.S.A. § 46(1), (2) or (4) and made for the purpose of financing inventory acquired or held for resale by a dealer in goods, the making or collection of which shall involve any violation of the provisions of this chapter, the lender shall have no right to collect or receive any interest or charges whatsoever, but shall have a right to collect and receive principal.*

(Emphasis supplied.) Plaintiff conceded that this provision precludes recovery of any portion of the loan, principal or interest, but had two responses: first, that he was not "engag[ed] in the business of making loans," and second, even if he had been, § 2233(b) was amended in 1990 to include the subject loan within the provision allowing recovery of the principal.

---

* 8 V.S.A. § 2201(a) states:

(a) No person, partnership, association, or corporation other than a bank, savings and loan association, credit union, pawnbroker, insurance company or seller of the merchandise or service financed shall *engage in the business of making loans* of money, credit, goods or things in action and charge, contract for or receive on any such loan a rate of interest, finance charge, discount or consideration therefor greater than twelve percent per annum without first obtaining a license under this section, section 7002 of this title, or sections 2352 and 2402 of Title 9 from the commissioner. (Emphasis supplied.)

In 1990, the Legislature replaced the phrase "in the case of any loan or extension of credit described in 9 V.S.A. § 46(1), (2) or (4) and made for the purpose of financing inventory acquired or held for resale by a dealer in goods" with the phrase "in the case of commercial loans," leaving the balance of the subsection unaltered. There is no dispute that the amended language, if applicable, would allow plaintiff recovery of the loan principal.

The court ruled that the outcome was controlled by 1 V.S.A. § 214(c), which states:

> If the penalty or punishment for any offense is reduced by the amendment of an act or statutory provision, the same shall be imposed in accordance with the act or provision as amended unless imposed prior to the date of amendment.

The court reasoned that § 214(c) was not by its terms limited to criminal penalties or punishments, and that the "forfeiture imposed by 8 V.S.A. § 2233 is a penalty, albeit civil." On cross-motions for summary judgment, the court entered judgment in plaintiff's favor in the principal amount of the loan, less interest and other charges already paid. Defendant appeals arguing that the amended provision does not apply retroactively, leaving the bar to recovery of principal or interest in place.

█ The main issue is whether the 1990 amendment to § 2233 applies retroactively. In general, absent specific legislative intent to the contrary, "a statute affecting legally existing rights should not be construed to operate retrospectively." *Curran v. Marcille*, 152 Vt. 247, 250, 565 A.2d 1362, 1364 (1989); 1 V.S.A. § 214(b). Many jurisdictions, however, have recognized an exception to this general rule when a usury statute is amended or repealed. *Orden v. Crawshaw Mortgage & Investment Co.*, 167 Cal. Rptr. 62, 63-64 (Ct. App. 1980) ("statutes which repeal or modify usury laws are to be given retrospective effect to determine the scope of liability with respect to transactions entered into prior to such repeal or modification"); *Paul v. United States Mutual Fin. Corp.*, 389 N.W.2d 487, 492 (Mich. Ct. App. 1986) (usury is a statutory penalty and "is ineffective if removed before judgment"); *First Fed. Savings & Loan Ass'n v. Guildner*, 295 N.W.2d 501, 503 (Minn. 1980) ("usury laws [are] penal in nature, and . . . an amendment or repeal of such a usury law, removing the penalty under certain situations, should be presumed retroactive in the absence of a legislative indication to the contrary"); *Vaughan v. Kalyvas*, 342 S.E.2d 617, 619 (S.C. Ct. App. 1986) ("repeal of usury

laws, absent a savings clause, operates retrospectively to cut off the defense of usury"); see also *Ewell v. Daggs*, 108 U.S. 143, 150-51 (1883) (repeal of usury law operates retrospectively because statutory right to avoid contract can be taken away by legislature as long as transaction not yet completed); 6A A. Corbin, Corbin on Contracts § 1532, at 803 (1962) ("Under most usury statutes, . . . it is held that the repealing statute validates, expressly or by implication, an antecedently unenforceable bargain."). These courts consider the forfeiture provisions of usury statutes a penalty to the lender. See, e.g., *Orden*, 167 Cal. Rptr. at 64 (remedies are in nature of a penalty); see also *Allied Chemical Corp. v. MacKay*, 695 F.2d 854, 857 (5th Cir. 1983) (usury statute is "highly penal," especially when calling for forfeiture of both principal and interest). Arguing that a borrower's right to forfeiture is not a vested interest, these courts have opted to apply amendments to usury statutes retroactively as long as the dispute has not reached final judgment. See *Krause v. Griffis*, 443 N.W.2d 444, 445 (Mich. Ct. App. 1989) ("defense of usury is not a vested right [and] may be extinguished by subsequent legislative action").

██ We agree with the reasoning of these cases. The Vermont Licensed Lenders Law is a special type of usury statute, requiring nonexempted lenders to obtain a license when lending money at an interest rate above twelve percent. The penalty for violating this requirement has undergone numerous recent revisions by the Legislature. Before 1988, § 2233, entitled "Penalties," provided for both criminal and civil penalties against lenders not complying with the licensing requirement, including the complete forfeiture of principal and interest. In 1988, an amendment to this section ameliorated the penalty provision of the Licensed Lenders Law to limit forfeiture to only interest payments for specific type of loans. 1987, No. 142 (Adj. Sess.), § 2. In 1990, the Legislature broadened the application of this ameliorative provision to include all commercial loans. 1989, No. 244 (Adj. Sess.), § 8. The amendments implicitly recognize that the Legislature considered the penalty of complete forfeiture too extreme.

█ Vermont law specifically recognizes that when the Legislature reduces a penalty provision in a statute, the lighter penalty will be imposed for any action that has not reached final judgment. 1 V.S.A. § 214(c). Based on § 214 and the sound reasoning of other jurisdictions, we conclude that the 1990 amendment to § 2233 was properly applied retroactively by the trial court.

■■ Finally, defendant argues that even if the 1990 amendment to § 2233 is retroactively applied, the loan at issue remains void and cannot be revived. While we recognize that the statute makes the contract "void," we think the better interpretation of the statute is that the Legislature intended making the contract "voidable." See Black's Law Dictionary 1573 (6th ed. 1990) ("The word 'void' is used in statutes in the sense of utterly void so as to be incapable of ratification, and also in the sense of voidable and resort must be had to the rules of construction in many cases to determine in which sense the Legislature intended to use it."); see also *Becker v. Becker*, 138 Vt. 372, 380, 416 A.2d 156, 162 (1980) ("void" in fraudulent conveyance statute is construed to mean voidable only); *Irish v. Clayes*, 10 Vt. 81, 85 (1838) ("Contracts are frequently called *void*, which are only *voidable*. . . . A usurious contract is called *void*; but it is only so, when it is *avoided* by the party, on whom the usury is practised.") (emphasis in original); see *In re Kelton Motors, Inc.*, 130 B.R. 170, 180 (Bankr. D. Vt. 1991) (word "void" in 9 V.S.A. § 2281 means "voidable"). The penalty provision states that an invalid loan "shall be void and the lender shall have no right to collect or receive any principal, interest, or charges whatsoever." 8 V.S.A. § 2233(b). Reading the provision as a whole, we conclude that the penalty provision of the Vermont Licensed Lenders Law grants the borrower the remedy of voiding the contract. Having granted such a remedy, the Legislature is also free to remove the remedy. See *Krause*, 443 N.W.2d at 445 ("defense of usury is not a vested right [and] may be extinguished by subsequent legislative action"). Before final judgment in this action, the Legislature removed the remedy of voiding the contract from the transaction at issue; therefore, the loan was not void.

*Affirmed.*

**Dooley, J.,** dissenting. It is undisputed that on February 1, 1989, the date that defendant ceased paying on the loan made by plaintiff, defendant did not owe plaintiff any money. This is true because plaintiff failed to obtain a license as a lender and charged interest at the usurious rate of 20%. At the time the loan in this case was made, the remedy provision of the Licensed Lenders Law specifically stated that any loans made in violation of the statute "*shall be void* and the lender shall have *no* right to collect or receive any principal, interest, or charges whatsoever." 8 V.S.A. § 2233 (amended 1988) (emphasis added). The language could not be clearer that this loan was void and uncollectible from the day it was made.

The majority now holds that on July 1, 1990, as a result of legislation that says nothing about the issue before us, the dead loan miraculously sprang back to life. Although the statute on which the majority relies can reduce penalties, I find it inconceivable that the Legislature intended that it could create new loan obligations, where none existed before, in essence inflicting a penalty on defendant. I dissent.

When the meaning of a statute is plain on its face, the statute must be enforced according to its terms. *Vermont Dev. Credit Corp. v. Kitchell*, 149 Vt. 421, 424, 544 A.2d 1165, 1166 (1988). The meaning of the preamended version of § 2233 could not be any clearer: any violation of the Licensed Lenders statute results in an immediate voiding of the underlying transaction. By the terms of the unamended statute, the consequence of failing to obtain a lender's license is imposed at the very moment of the loan's inception. Accordingly, 1 V.S.A. § 214(c) offers this loan agreement no salvation because it provides that reduced penalties will be applied retroactively "unless [the initial penalties are] imposed prior to the date of the amendment." 1 V.S.A. § 214(c). Here, the "penalty" was imposed on October 19, 1988, the day the parties entered into the loan agreement — almost two years before the effective date of the amendment. See *Klipping v. McCauley*, 354 P.2d 167, 169 (Colo. 1960) (statutory amendment reducing penalties "extends its bounty only to such loan transactions as were *lawfully* entered into prior to its effective date;" and transaction at issue void under original act). We have not been reluctant to enforce the statute in just this manner. See *Kitchell*, 149 Vt. at 427, 544 A.2d at 1168 (voiding a $175,000 loan executed by nonprofit corporation for failing to procure license under Licensed Lenders statute). Indeed, a variety of jurisdictions provide that loans or contracts that directly contravene a licensing requirement are null, void, and unenforceable. See, e.g., *Derico v. Duncan*, 410 So. 2d 27, 31 (Ala. 1982); *Currier v. Tuck*, 287 A.2d 625, 627-28 (N.H. 1972); *Gottesfeld v. Kaminski*, 524 A.2d 872, 875 (N.J. Super. Ct. App. Div. 1987).

The Court is applying here an extreme example of retroactivity. Imagine how the Court's application of § 214(c) would work in the criminal context. If the Legislature lowered the maximum penalty for armed robbery, we could agree that the effect of § 214(c) would be to apply the reduced maximum to a defendant who committed the crime prior to the amendment but was sentenced after the Legislature's action. The new penalty would apply to a preexisting crime but not to reduce an existing sentence.

The majority's interpretation of § 214(c) would go much further. Prisoners who have already been sentenced for armed robbery would have their sentences reduced if they were at or near the old maximum. I suspect that the Legislature would be amazed that its action would have an effect on existing sentences, even though it had said nothing about them.

The Court appears to have two answers to the fact that it has recreated a debt obligation that no longer exists: (1) "void" means "voidable"; and (2) extreme retroactivity for usury penalty reductions is the norm. The former answer is at variance with the statutory wording. A void contract is one that does not exist at law; it is null *from the beginning.* Black's Law Dictionary 1574 (6th ed. 1990). As the majority shows, this Court has occasionally decided that in the context involved, the term "void" actually means "voidable." Thus, in describing the common law of illegal contracts in *Irish v. Clayes*, 10 Vt. 81, 85 (1838), the Court noted that contracts are often described as "void" when they are merely voidable. In *Becker v. Becker*, 138 Vt. 372, 380, 416 A.2d 156, 162 (1980), we construed the term "void" in the Fraudulent Conveyance Act as "voidable" because the fraudulent transaction is valid between the parties who enter it. The sole effect of the act is to make it invalid when challenged by a creditor who was defrauded by the transfer. See *Jones v. Williams*, 94 Vt. 175, 185, 109 A. 803, 807 (1920); *Tudor v. Tudor*, 80 Vt. 220, 223, 67 A. 539, 540 (1907).

The decisions on violations of licensed lending laws have been directly contrary to the Court's holding here. The rule and rationale was explained by the Supreme Judicial Court of Massachusetts:

> The purpose of the Small Loan Act was to prohibit the unlicensed business of making small loans and to prevent an excessive rate of interest on such loans. The statute was passed as a protection to the borrower; it was intended to make the statute effective and to prevent its evasion by indorsing notes given for such loans to third parties. It would afford little protection to the borrower if the notes given contrary to the statute would be valid in the hands of a holder in due course. In our opinion the word "void" was used in its technical sense; the notes were void at their inception and of no validity in the hands of [the holder].

*Cuneo v. Bornstein,* 168 N.E. 810, 811 (Mass. 1929).[1] Other courts have found the loan to be void and have gone beyond the remedies that would be allowed if the loan were only voidable. For example, consistent with the view that the loan was void ab initio, the decisions allow the debtor to recover any payments made on the loan. See *Credit Finance Service, Inc. v. Able,* 127 A.2d 396, 400 (D.C. Ct. App. 1956)(Maryland law); *Hardman v. New Fin. Co.,* 259 S.W.2d 431, 432 (Ky. Ct. App. 1953); *Robb v. Central Credit Corp.,* 100 N.W.2d 57, 64 (Neb. 1959); *Smashed Ice v. Lee,* 200 N.W.2d 236, 238 (S.D. 1972).

There is no reason in law and policy to hold that the meaning of "void" in § 2233 is other than that which is plain. The ruling of the majority recreates a loan that was a nullity, as if it never existed, at the time of the Court's action.

The Court's holding that § 2233 makes the loan voidable, not void, creates additional difficulties with the majority decision. It is clear that the purpose of small loan laws, like Vermont's Licensed Lenders Law, was rooted in strong public policy concerns, namely, to protect the public from loan-sharking.[2] See generally National Consumer Law Center, Usury and Consumer Credit Regulation § 2.2.3.1, at 21 (1987); see also 8 V.S.A. § 1 (purpose of statute is "to protect the public against unfair and unconscionable lending . . . policies"). The original statutes created a licensed class of small lenders who, in exchange for state regulation of their business, were permitted to charge interest rates higher than most usury ceilings, but were nevertheless vastly lower than rates charged by loan sharks. Usury and Consumer Credit Regulation, *supra,* at 22. The statutes employed a variety of safeguards that protected debtors from "the greed and the rapacity of unscrupulous persons who might exploit [the debtor's] necessities and misfortunes to his loss and their profit." *Valley Acceptance Corp. v. Glasby,* 337 S.E.2d 291, 295 (Va. 1985). This case involves a lender who charged usurious rates of interest, exactly the concern that gives rise to the debtor protections in the statute.

---

[1] As in this case, *Cuneo* involved the failure to obtain a license. *Cuneo* was reaffirmed and distinguished in *Begelfer v. Najarian,* 409 N.E.2d 167, 174-75 (Mass. 1980), where the court considered the usury provisions of the Small Loans Act which stated that the loan "may be declared void." Because the provision authorized the court to find the loan was void, but did not command it, the provision made the loan voidable in the discretion of the court.

[2] Prior to April 30, 1980, § 2201 of the Licensed Lenders Act applied only to loans of $1500 or less, and the entire chapter was entitled "Small Loans."

Given this history and legislative purpose, the consequences provided for violation of the act cannot be characterized solely, or even primarily, as punitive measures; they are also remedial. See Usury and Consumer Credit Regulation, *supra*, § 9.2.1., at 215; see also *Glasby*, 337 S.E.2d at 295 (small loans act is remedial in nature and must be liberally construed to advance remedy for which it was promulgated). Indeed, we recognized the remedial nature of forfeitures in *Chittenden Trust Co. v. Andre Noel Sports*, 159 Vt. 387, 621 A.2d 215 (1992). In that case, a secured party asked this Court to abandon its earlier holding that failure to abide by the procedural requirements for disposition of the collateral on the debtor's default prevents the secured party from recovering a deficiency judgment. We noted that some courts have rejected this "absolute bar" rule because they view it as "punitive in nature, involv[ing] a forfeiture, and creat[ing] a penalty." *Id.* at 394, 621 A.2d at 219. We rejected this reasoning, however, and retained the absolute-bar rule because it "*does not punish*, but rather precludes the secured party from invoking the operation of remedial statutory provisions." *Id.* at 395, 621 A.2d at 220 (emphasis added).

The majority's conclusion that the loan is voidable, not void, may be an answer to defendant's vested rights claim, but it makes the creditor's remedy indistinguishable from that in *Andre Noel Sports*. The creditor is left in the position at the commencement of the litigation, unable to collect more, but able to keep whatever proceeds were received before the litigation. This result is remedial, and 1 V.S.A. § 214(c), which applies only to penalties and punishments, cannot act retroactively to take away defendant's remedy. Instead, retroactivity is governed by 1 V.S.A. § 214(b)(4), which prohibits retroactive application that would "*[a]ffect any suit, remedy or proceeding to enforce . . . any right . . . or liability . . . accrued* under the amended or repealed provision." (Emphasis added.) Cf. *Stewart v. Darrow*, 141 Vt. 248, 252, 448 A.2d 788, 790 (1982) (interest in freedom from previously barred claim cannot be eliminated by retroactive application of statute of limitations).

The Court's second answer is that reductions in usury penalties are applied retroactively. This proposition may be true as a general rule, but none of the majority's cases are on point to the circumstances here. In none of the cases did the applicable statute make the loan void ab initio because of the violation of the usury law. See Minn. Stat. Ann. § 334.011 subd. 2 (if loan usurious, interest on debt "forfeited"); Miss. Code Ann. § 75-17-1(9) *cited in Allied Chemical Corp. v.*

*MacKay*, 695 F.2d 854, 856 (5th Cir. 1983) (same); California Constitution art. XV § 1(2) (no person shall recover more than interest authorized by law); Mich. Comp. Laws Ann. § 438.32 (lender who violates provisions of statute "barred" from recovery of interest). Although these statutes provide specific "penalties" for violations, retroactive application of amendments or revocations is possible because the language employed in these statutes, unlike 8 V.S.A. § 2233, did not make the violations nullities from the beginning. See Black's Law Dictionary 650 (6th ed. 1990) (defining "forfeiture" as a divestiture of specific property without compensation; defining verb "to bar" as "impediment, obstacle or preventative barrier").

Since § 214(c) cannot apply in this case, I would follow the well-settled principle of statutory construction that absent the most clear and unequivocal language, a statute affecting legally existing rights should not be construed to operate retroactively. *Curran v. Marcille*, 152 Vt. 247, 250, 565 A.2d 1362, 1364 (1989). We have held on several occasions that unless a statute's language is so clear as to permit no other construction, the presumption is that the Legislature intended the statute to act prospectively only. See, e.g., *Northwood AMC Corp. v. American Motors Corp.*, 139 Vt. 145, 148, 423 A.2d 846, 849 (1980); see also *Hockley County Seed & Delinting, Inc. v. Southwestern Investment Co.*, 476 S.W.2d 38, 40 (Tex. Ct. Civ. App. 1971) (in absence of express statutory language, amendment of usury statute decreasing penalties applied prospectively); *Davis v. General Motors Acceptance Corp.*, 127 N.W.2d 907, 911 (Neb. 1964) (statute amending forfeiture provisions specifically provided for retroactive application).

Here, the amended version of § 2233 is silent as to whether the amendment is to have retroactive application. We must presume, therefore, that the Legislature intended the amendment to operate prospectively. *Northwood*, 139 Vt. at 149, 423 A.2d at 849. Moreover, the language of § 2233 infers a prospective application by using words like "shall have" and the "making of which." See *id.* (no indication of intent to apply statute retroactively where amendment used prospective language like "shall mean" and "shall be compensated"). Accordingly, no intent to apply § 2233 retroactively can be discerned.

The effect of the majority's decision is to create a new loan obligation and to require defendant to pay it. Nothing in the relevant statutes suggests that the Legislature intended this extreme result.

I dissent.