2004 VT 94

**FORD MOTOR CREDIT COMPANY v. Matthew A. WELCH**

[861 A.2d 1126]

No. 03-453

¶ 1. September 17, 2004. Appellant, Ford Motor Credit Company ("Ford"), commenced this action for a deficiency judgment following the sale of a repossessed automobile at private auction. The trial court denied Ford's claim because it found that Ford had failed to provide the defendant debtor with notice of a right to redeem. We affirm.

¶ 2. In 1998, Matthew Welch purchased a used pickup truck and entered into a repayment agreement with Ford. The contract provided Ford with a security interest in the vehicle, and the right to repossess it if Welch failed to make timely payments. The contract further provided that upon repossession Ford must provide Welch with a notice of a right of redemption specifying the amount needed to redeem and that Welch could exercise his right of redemption any time prior to the moment of sale by Ford. If Welch did not exercise his right of redemption, the contract authorized Ford to sell the vehicle and apply the

proceeds to Welch's outstanding obligation.

¶ 3. Welch defaulted on his payments and voluntarily surrendered the vehicle to Ford on June 4, 2001. Ford sold the vehicle at private auction on June 22, and credited the sale price to Welch's account. A deficiency of $4,466.82 remained, and on June 2, 2003, Ford filed suit in the Rutland Superior Court.

¶ 4. At trial, Ford submitted business records into evidence during the testimony of the custodian of records for its New Hampshire office to establish that it had sent notice of a right to redeem to Welch prior to the sale of the repossessed vehicle. The court admitted the records without objection. Welch, however, testified that he never received the notice, and questioned the sufficiency of Ford's evidence. The trial court, after weighing the evidence, found that Ford violated the contract by failing to provide Welch with notice of his right to redemption. The court therefore denied Ford's request for a deficiency judgment.

¶ 5. Ford raises five claims on appeal: (1) that the court wrongly interpreted V.R.E. 803(6) to require a corporate witness testifying to business records to have personal knowledge regarding each transaction contained in the records; (2) that the court applied the wrong legal standard by requiring proof of receipt of notice, rather than merely proof that the notice was sent; (3) that the court incorrectly determined that Ford failed to prove that it sent the notice to Welch; (4) that the court used an outdated remedial standard when it barred any recovery of deficiency; and (5) that the court should have waived the notice requirement because the debtor voluntarily surrendered the collateral for sale at private auction.

¶ 6. First, Ford contends that the trial court misapplied V.R.E. 803(6) and improperly discounted evidence that it sent Welch the required notice.* Ford argues that the court interpreted the rule as requiring a corporate witness testifying to business records to have personal knowledge of the submitted evidence. We disagree with this characterization of the court's action, because V.R.E. 803(6) goes to the admissibility, and not the weight of the evidence. Because Ford's business records were admitted without objection, its argument is unavailing.

¶ 7. In its second claim, Ford argues that the court imposed the wrong legal standard by requiring Ford to show proof of "receipt," rather than proof, as required by the contract, that the notice was "sent." Again, we disagree.

¶ 8. "[T]he secured party has the burden of pleading and proving that any given disposition of collateral was commercially reasonable, and *preceded by reasonable notice." Chittenden Trust Co. v. Maryanski*, 138 Vt. 240, 244-45, 415 A.2d 206, 209 (1980) (emphasis added). In its decision at trial, the court emphasized Welch's testimony that he never received notice, but it did so as support for its finding that Ford had failed to prove that it actually mailed the notice. The court's final conclusion, moreover, was expressly based on Ford's failure to prove that notice was sent: "I don't have any evidence in this case ... how [the notice] was stamped and what method was used to send it to the debtor in Brandon, so I'm going to deny the request and find for the Defendant in this case." Thus, we conclude that the court applied the proper legal standard.

_____

* Rule 803(6) allows for admission of business records when accompanied by testimony of a custodian of the records, or other qualified witness, that such records are kept in the regular course of business, unless the method or circumstances of preparation indicate lack of trustworthiness.

¶ 9. Third, Ford takes issue with the court's determination, that based on the weight of the evidence, Ford failed to prove that it had actually sent the notice of the right of redemption to Welch. The custodian of records for Ford's New Hampshire office testified that the company's standard practice is to prepare and send notice of a right to redeem whenever it repossesses a vehicle. She could not, however, testify as to the procedures employed by the South Carolina office, which allegedly prepared and sent the notice to Welch. Nor did she have personal knowledge of whether the notice was actually placed in the mail, and she could not explain why, in contrast to normal procedures, Ford did not send the notice return receipt requested. Moreover, the copy of the notice offered into evidence by Ford at trial was unsigned and unexecuted, and did not indicate whether it was actually mailed.

¶ 10. "As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence." *Cabot v. Cabot*, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997). A trial court's findings shall not be set aside unless clearly erroneous. V.R.C.P. 52(a)(2); *Bergeron v. Boyle*, 2003 VT 89, ¶ 15, 176 Vt. 78, 838 A.2d 918. Here, because there is sufficient credible evidence on the record that supports the court's conclusion that Ford failed to prove it sent the notice, we will not disturb it.

¶ 11. Ford's forth claim challenges the remedy applied by the trial court. After finding that Ford had failed to provide proper notice, the trial court denied Ford's request to recover the deficiency. On appeal, Ford argues that revisions made by the Legislature in 2000 to Article 9 of Vermont's Uniform Commercial Code (UCC) dictate use of a different remedial standard. See 1999, No. 106 (Adj. Sess.), §§ 2, 23 (effective July 1 2001).

¶ 12. In *Maryanski*, 138 Vt. at 246, 415 A.2d at 210, we held that failure to provide reasonable notice of disposition acts as an absolute bar to recovery of a deficiency. See also *Chittenden Trust Co. v. Andre Noel Sports*, 159 Vt. 387, 393-95, 621 A.2d 215, 219-20 (1992) (reviewing intervening case law and affirming the "absolute-bar" rule of *Maryanski*). Ford argues that *Maryanski* was abrogated by the Legislature's repeal of former 9A V.S.A. § 9-504(3) and addition of 9A V.S.A. § 9-626, which establishes a "rebuttable presumption" rule entitling a noncomplying secured party to recover in limited circumstances. We disagree.

¶ 13. The revised remedial provisions Ford relied on are not applicable to this case. Both the notice and remedial provisions Ford cites, §§ 9-611(b) and 9-626 respectively, became effective on July 1, 2001. All of the facts and circumstances giving rise to the present dispute, however, occurred by June 2001.

> The . . . repeal of [a] . . . statutory provision . . . shall not:
>
> . . . .
>
> (4) Affect any suit, remedy or proceeding to enforce or give effect to any right, privilege, obligation or liability acquired, incurred or accrued under the amended or repealed provision prior to the effective date of the amendment or repeal; and the suit, remedy or proceeding may be instituted, prosecuted or continued as if the act or provision had not been repealed or amended.

1 V.S.A. § 214(b)(4). See also *State v. Willis*, 145 Vt. 459, 467, 494 A.2d 108, 112 (1985) ("The applicable law is that which is in effect at the time of the occurrence of the facts which give rise to the *rights* in question." (emphasis in original)).

¶ 14. Under the savings statute, 1 V.S.A. § 214(b), revisions or repeals of statutory provisions do not apply retrospectively where the change "affects a preexisting 'right, privilege, obligation or liability.'" *Myott v. Myott*, 149 Vt. 573, 576, 547 A.2d 1336, 1338 (1988) (quoting 1 V.S.A. § 214(b)(4)). Here, all of the rights and obligations in question accrued before the effective date of the UCC provisions on which Ford relies. Therefore, *Maryanski* applies to this case, and there is no error.

¶ 15. Finally, Ford argues that, where the debtor voluntarily surrenders collateral to the creditor and the creditor elects to dispose of the collateral by private sale, the notice requirement should be deemed waived. We disagree.

¶ 16. The effective law at the time Welch surrendered his vehicle was former 9A V.S.A. § 9-504(3), which required that the secured party provide notice to the debtor "if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale." Under this clear standard, we can find no waiver of notice by Welch. See, e.g., *Vermont Nat'l Bank v. Hamilton*, 149 Vt. 477, 482 n.4, 546 A.2d 1349, 1352 n.4 (1988) (noting that a stipulated order which provided that constructive possession of secured collateral would be turned over to the secured party and the proceeds applied to the secured obligation was not a specific waiver of notice).

¶ 17. Nor do we find Ford's argument for implied waiver of notice compelling. Voluntary surrender does not forfeit a debtor's right to notice, or exercise of the right of redemption. Such a construction would merely discourage voluntary surrender and frustrate the state's interest in promoting peaceful repossessions. *Union Trust Co. v. Hardy*, 400 A.2d 384, 388 (Me. 1979). While a debtor may not bid on the collateral at a private sale, he retains the right to redeem prior to the sale. Thus, Welch was entitled to timely notice of the date and time of sale, so that he would have known when his redemption rights would expire. The Legislature has provided safeguards for the rights of both creditors and debtors, and we find no applicable exceptions here.

*Affirmed.*

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.